**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

GEORGIA A. STEWART,            )
                              )
    Plaintiff,            )
                              )
v.                            )    No. 17-cv-495 (CKK)
                              )
DISTRICT OF COLUMBIA,          )
                              )
    Defendant.            )

**DEFENDANT DISTRICT OF COLUMBIA'S MOTION FOR SUMMARY JUDGMENT**

Defendant District of Columbia (the District) respectfully moves for summary judgment

pursuant to Fed. R. Civ. P. 56.  In support of this motion, the District submits the attached

memorandum of points and authorities, statement of undisputed material facts, exhibits, and

proposed order for the Court's consideration.

Date: May 10, 2019          Respectfully Submitted,

                        KARL A. RACINE
                        Attorney General for the District of Columbia

                        CHAD COPELAND
                        Acting Deputy Attorney General
                        Civil Litigation Division

                        */s/ Glenn T. Marrow*
                        GLENN T. MARROW [252713]
                        Chief, Civil Litigation Division Section II

                        */s/ Christina Okereke*
                        CHRISTINA OKEREKE [219272]
                        Assistant Attorney General
                        441 Fourth Street, N.W.
                        Suite 630 South
                        Washington, D.C. 20001
                        (202) 727-5173 (Telephone)
                        (202) 715-7767 (Fax)

christina.okereke@dc.gov

*Counsel for Defendant District of Columbia*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| GEORGIA A. STEWART, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17-cv-495 (CKK) |
| | ) | |
| DISTRICT OF COLUMBIA, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT DISTRICT OF COLUMBIA'S STATEMENT OF UNDISPUTED
MATERIAL FACTS**

Defendant District of Columbia (the District) submits the following statement of material

facts as to which there is no genuine dispute in support of its motion for summary judgment:

1.      Plaintiff was born in 1949.  Ex. 1, Deposition of Georgia Stewart, Nov. 8, 2018

(Stewart Dep.) at 7:17-18.

2.      Plaintiff began her employment at the D.C. Office of Human Rights (OHR) in 1967.

*Id.* at 8:20-9:8.

3.      Plaintiff eventually became the Mediation Manager of the Mediation Unit at OHR.

*Id.* at 24:6-25:17.

4.      The Mediation Unit conducts mediations between parties on complaints filed with

OHR to try to resolve cases.  *Id.* at 26:7-14.

5.      Plaintiff's duties and responsibilities as the Mediation Manager included ensuring

the timely scheduling of mediations.  *Id.* at 26:21-27:11.

**Plaintiff's EEO Charge**

6.      In January 2013, Plaintiff filed a charge of discrimination with the U.S. Equal

Employment Opportunity Commission (EEOC).  Ex. 2, Jan. 17, 2013 EEOC charge.

1

7.      Plaintiff alleged that the then-Director of OHR, Gustavo Velasquez, retaliated against her for engaging in protected activity.  *Id.*

**Appointment of Monica Palacio as OHR Director**

8.      Monica Palacio became the Interim Director of OHR in November 2013 and became the permanent Director upon her confirmation by the D.C. City Council in March 2014. Declaration of Monica Palacio, dated May 10, 2019 (Palacio Dep.) ¶ 1.

9.      Palacio became Plaintiff's direct supervisor upon her appointment as Interim Director.  *Id.* ¶ 2; Ex. 1, Stewart Dep. at 42:5-8.

10.      After Palacio became Plaintiff's supervisor, Plaintiff told her that Plaintiff had not received a raise in several years.  Palacio Decl. ¶ 4.

11.      In August 2015, Palacio submitted a request to the D.C. Department of Human Resources (DCHR) for a 10% increase to Plaintiff's salary, which DCHR approved.  *Id.*; Ex. 3, Aug. 3, 2015 Justification Memo.

12.      Plaintiff also requested a television to keep herself abreast of the news and a flexible schedule from Palacio, both of which Palacio approved.  Palacio Decl. ¶ 4.

**Plaintiff's Performance Issues**

13.      Palacio began to observe performance issues with Plaintiff in early 2015 to early 2016.  *Id.* ¶ 5.

14.      Palacio met with Plaintiff regularly, provided guidance, and requested that she improve her performance.  Ex. 4, Deposition of Monica Palacio, Mar. 19, 2019 (Palacio Dep.) at 27:5-10, 29:2-3, 82:22-83:2.

A.    **Plaintiff's Failure to Update the Case Management System**

15.    One of Plaintiff's responsibilities as the Mediation Manager was to maintain information about mediations in OHR's case management system, which is called "MATS." Palacio Decl. ¶¶ 3, 6.

16.    It is the responsibility of every manager in OHR to ensure that his or her team timely and reliably enters case updates in MATS.  Ex. 4, Palacio Dep. at 20:8-15, 20:21-5, 76:12-20, 77:4-7, 80:4-9.

17.    When OHR receives a complaint of discrimination, the case moves through intake, mediation, and if necessary, investigation, legal review, and conciliation.  Palacio Decl. ¶ 6; Ex. 4, Palacio Dep. at 21:8-13, 23:8-15.

18.    Mediation is mandatory in all OHR cases.  Palacio Decl. ¶ 6; Ex. 4, Palacio Dep. at 23:16-18.

19.    In Palacio's view, it is crucial that case updates be entered in MATS promptly to ensure that cases are resolved efficiently.  Palacio Decl. ¶ 6.

20.    According to Palacio, because mediation is mandatory in all OHR cases, it is critical that updates in a case's mediation status be promptly entered in MATS so that OHR's Investigations Unit knows whether a case has or has not been settled so that the assigned investigator knows whether to continue the investigation.  Palacio Decl. ¶ 6; *see also* Ex. 4, Palacio Dep. at 78:19-80:3.

21.    The failure to promptly enter updates in mediation cases in MATS resulted in inefficiencies in OHR's management of cases.  Ex. 4, Palacio Dep. at 18:2-19:19.

22.    Palacio asked Plaintiff to update mediation matters in MATS within 24-48 hours of any change in case status.  Palacio Decl. ¶ 7.

23.     Plaintiff did not consistently enter updates in MATS in a timely manner as directed by Palacio.  Ex. 1, Stewart Dep. at 51:3-15; Palacio Decl. ¶ 7.

24.     According to Palacio, this caused investigators to needlessly continue to investigate a case that had been resolved in mediation weeks or months earlier because the case had not been updated in the system.  Palacio Decl. ¶ 7.

25.     Because mediations are confidential, the agency was dependent on Plaintiff to update information about the Mediation Unit's cases in MATS.  *Id.* ¶ 8.

### B.     Plaintiff's Mismanagement of Staff and Poor Judgment

26.     Palacio believed that Plaintiff demonstrated poor judgment and management of her staff.  *Id.* ¶ 9.

27.     When a full-time staff mediator under Plaintiff's supervision resigned from OHR, she informed Palacio that Plaintiff had not been assigning her enough work.  *Id.*; Ex. 4, Palacio Dep. at 47:3-48:6.

28.     Palacio discovered that Plaintiff was relying more on contract mediators and not sufficiently utilizing the staff mediator, unnecessarily costing the agency more money.  Palacio Decl. ¶ 9.

29.     According to Palacio, Plaintiff also demonstrated poor judgment and management in the hiring and management of another mediator who was previously working at OHR as a contract mediator.  *Id.* ¶ 10.

30.     Upon Plaintiff's strong recommendation, Palacio approved hiring him as a full-time staff mediator.  *Id.*; *see also* Ex. 1, Stewart Dep. at 62:16-63:1.

31.     However, serious problems emerged with this mediator shortly after he was hired.  Palacio Decl. ¶ 10.

32.      Palacio was informed that he slept in his office, was disrespectful to Plaintiff, and was unable to effectively use his desktop computer. *Id.*; *see also* Ex. 1, Stewart Dep. at 58:15-59:6.

33.      Palacio confronted Plaintiff about these issues and Plaintiff admitted that she could no longer manage him. Palacio Decl. ¶ 10.

34.      Plaintiff prepared a memorandum outlining her concerns about the mediator. Ex. 5, Feb. 29, 2016 email from Plaintiff to Monica Palacio and Ayanna Lee & attached memorandum; Ex. 1, Stewart Dep. at 64:17-65:16; Palacio Decl. ¶ 10.

35.      Palacio terminated the mediator's employment based on the information provided by Plaintiff in her memorandum. Palacio Decl. ¶ 10; Ex. 4, Palacio Dep. at 84:12-22.

**C.      Plaintiff's Attendance and Behavior at Office Meetings.**

36.      Plaintiff failed to attend several regularly scheduled management meetings and staff meetings or would arrive late. Palacio Decl. ¶ 11; *see* Ex. 6, Email correspondence.

37.      As the management and staff meetings were held on the first and second Tuesday of every month, respectively, in Palacio's view, there was no excuse for Plaintiff's failure to attend. Palacio Decl. ¶ 11.

38.      In addition, when Plaintiff did attend meetings, she often made unproductive and disrespectful comments. *Id.* ¶ 12.

39.      For example, during one staff meeting, which was attended by OHR's staff of approximately 40 employees, when Palacio asked Plaintiff a question, she replied, "I don't have to answer that." *Id.*

40.      Palacio found Plaintiff's response to be rude, unprofessional, and insubordinate. *Id.*

5

**Alleged Discrimination and Hostile Work Environment Based on Age**

41.     Plaintiff asked Palacio for an additional administrative assistant to assist her in the Mediation Unit. *Id.* ¶ 14; Ex. 1, Stewart Dep. at 49:16-50:11, 66:15-21.

42.     However, the agency did not have sufficient funds in the budget to allocate to that, so Palacio did not approve Plaintiff's request. Palacio Decl. ¶ 14.

43.     Plaintiff did have an administrative assistant, Eloisa Rocha. *Id.*; Ex. 1, Stewart Dep. at 51:11-13, 72:4-13, 72:19-21.

44.     Rocha sometimes provided coverage at the front desk, but she was permanently assigned as the administrative assistant in the Mediation Unit and was available to assist Plaintiff. Palacio Decl. ¶ 14; *see also* Ex. 1, Stewart Dep. at 73:6-13.

45.     During the time period when Palacio supervised Plaintiff, three staff mediators were hired in the Mediation Unit. Palacio Decl. ¶ 15; Ex. 4, Palacio Dep. at 48:7-49:14.

46.     Plaintiff was involved in the decision to hire each of them. Palacio Decl. ¶ 15; Ex. 4, Palacio Dep. at 48:7-49:14.

47.     Plaintiff compares herself to Rahsaan Coefield, OHR's former Director of Investigations who also acted as the Deputy Director. Ex. 1, Stewart Dep. at 56:10-12, 95:1-20.

48.     He had approximately ten employees under his supervision. Palacio Decl. ¶ 16.

49.     Because he managed two units, the Intake and Investigation Units, Palacio believes that staffing levels were appropriate based on the workload in those two units. *Id.*

50.     Plaintiff had contract mediators available to her as well as staff mediators. *Id.*

51.     Plaintiff alleges that during a meeting with Palacio and Coefield in May 2016, Coefield said to her, "You annoy me and your unit's dysfunctional." Ex. 1, Stewart Dep. at 53:1-55:22.

6

52.     On May 12, 2016, Plaintiff sent an email to Palacio complaining of Coefield's alleged comments.  Ex. 7, May 12, 2016 email from Georgia Stewart to Monica Palacio.

53.     In a subsequent email to Palacio, Plaintiff stated in regard to Coefield's alleged comments, "I do not know if it is because I am a woman, elderly, or that he simply doesn't like the way I look."  Ex. 8, June 17, 2016 email from Georgia Stewart to Monica Palacio.

54.     Coefield did not supervise Plaintiff.  Ex. 1, Stewart Dep. at 42:16-18.

55.     Palacio did not make any remarks to Plaintiff that Plaintiff perceived to be discriminatory based on age.  *Id.* at 80:21-81:11.

**Plaintiff's Termination**

56.     In a memorandum dated September 20, 2016, Palacio recommended Plaintiff's termination to DCHR.  Ex. 9, Sept. 27, 2016 email from Monica Palacio to Margaret Radabaugh & attached Sept. 20, 2016 Memorandum.

57.     In her memorandum, Palacio detailed three main reasons for Plaintiff's termination: (1) Plaintiff's failure/refusal to follow OHR's case processing guidelines; (2) Plaintiff's failure to attend management meetings and/or collaborate with other managers; and (3) Plaintiff's poor professional judgment and ineffective/wasteful and punitive management decisions.  *Id.*, Sept. 20, 2016 Mem.; *see also* Palacio Decl. ¶¶ 5-13; Ex. 4, Palacio Dep. at 17:16-19:19, 25:18-27:4, 46:7-47:6, 57:2-58:8, 87:9-14, 88:4-10.

58.     As the Mediation Manager, Plaintiff was an MSS employee.  Ex. 1, Stewart Dep. at 24:19-25:4; Ex. 4, Palacio Dep. at 64:14-22.

59.     MSS employees can be terminated at will.  Ex. 4, Palacio Dep. at 64:14-22.

60.     Plaintiff was notified of the separation of her employment on September 30, 2016. Ex. 10, Sept. 30, 2016 Notice of Separation.

61.     An existing OHR employee replaced Plaintiff as the Mediation Manager after her termination.  Palacio Decl. ¶ 17.

62.     This employee was over 40 years old when he was appointed as the Mediation Manager in late 2016.  *Id.*

63.     Plaintiff alleges that Palacio terminated several OHR employees because of their age.  *See* Ex. 1, Stewart Dep. at 87:11-89:7, 100:16-101:6.

64.     However, four of the five employees Plaintiff references were not terminated.  *See* Palacio Decl. ¶ 19.

65.     As Director, Palacio terminated the employment of two employees who were over 40 years old, a general counsel and the mediator hired upon Plaintiff's recommendation discussed earlier.  *Id.* ¶ 18.

66.     During her tenure as Director, Palacio has also terminated three employees who were under 40 years old, a data analyst, a compliance officer, and a manager.  *Id.*

67.     All were terminated for legitimate business reasons.  *Id.*

68.     Palacio was not aware until Plaintiff filed this lawsuit that she had previously filed an EEOC charge in 2013.  *Id.* ¶ 22.

69.     Palacio was 48 years old at the time of Plaintiff's termination in September 2016.  *Id.* ¶ 21.


Date: May 10, 2019                          Respectfully Submitted,

                                            KARL A. RACINE
                                            Attorney General for the District of Columbia

                                            CHAD COPELAND
                                            Acting Deputy Attorney General
                                            Civil Litigation Division

8

*/s/ Glenn T. Marrow*
GLENN T. MARROW [252713]
Chief, Civil Litigation Division Section II

*/s/ Christina Okereke*
CHRISTINA OKEREKE [219272]
Assistant Attorney General
441 Fourth Street, N.W.
Suite 630 South
Washington, D.C. 20001
(202) 727-5173 (Telephone)
(202) 715-7767 (Fax)
christina.okereke@dc.gov

*Counsel for Defendant District of Columbia*

9

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GEORGIA A. STEWART,       )
           )
     Plaintiff,        )
           )
     v.         )     No. 17-cv-495 (CKK)
           )
DISTRICT OF COLUMBIA,     )
           )
     Defendant.      )

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT DISTRICT OF COLUMBIA'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Plaintiff sues Defendant District of Columbia (the District) for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Title VII), and for discriminatory termination and hostile work environment under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (ADEA).  The undisputed facts show that Plaintiff cannot establish her claims, and that District is entitled to judgment as a matter of law.

As set forth below, Plaintiff cannot establish a prima facie retaliation claim under Title VII because there is no causation between her 2013 discrimination complaint and her termination in 2016.  Furthermore, Plaintiff was a poor performer, and thus the District has a legitimate, non-discriminatory reason for Plaintiff's termination that no reasonable jury could find to be pretextual.  Plaintiff cannot establish an ADEA discrimination claim because she was not disadvantaged in favor of a younger employee, and in any event, again, the District has a legitimate reason for her termination that cannot be overcome.  Lastly, Plaintiff's allegations of a hostile work environment do not demonstrate conduct sufficiently severe or pervasive to

establish a claim.  Accordingly, the District is entitled to summary judgment and the Court should dismiss the Amended Complaint with prejudice.

## FACTS

Plaintiff was born in 1949.  Defendant's Statement of Undisputed Material (DSMF) ¶ 1. She began her employment at the D.C. Office of Human Rights (OHR) in 1967.  *Id.* ¶ 2.  She eventually became the Mediation Manager of the Mediation Unit at OHR.  *Id.* ¶ 3.  The Mediation Unit conducts mediations between parties on complaints filed with OHR to try to resolve cases.  *Id.* ¶ 4.  Plaintiff's duties and responsibilities as the Mediation Manager included ensuring the timely scheduling of mediations.  *Id.* ¶ 5.

### Plaintiff's EEO Charge

In January 2013, Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC).  *Id.* ¶ 6.  Plaintiff alleged that the then-Director of OHR, Gustavo Velasquez, retaliated against her for engaging in protected activity.  DSMF ¶ 7.

### Appointment of Monica Palacio as OHR Director

Monica Palacio became the Interim Director of OHR in November 2013 and became the permanent Director upon her confirmation by the D.C. City Council in March 2014.  *Id.* ¶ 8. Palacio became Plaintiff's direct supervisor upon her appointment as Interim Director.  *Id.* ¶ 9.

After Palacio became Plaintiff's supervisor, Plaintiff told her that Plaintiff had not received a raise in several years.  *Id.* ¶ 10.  In August 2015, Palacio submitted a request to the D.C. Department of Human Resources (DCHR) for a 10% increase to Plaintiff's salary, which DCHR approved.  *Id.* ¶ 11.  Plaintiff also requested a television to keep herself abreast of the news and a flexible schedule from Palacio, both of which Palacio approved.  *Id.* ¶ 12.

**Plaintiff's Performance Issues**

Palacio began to observe performance issues with Plaintiff in early 2015 to early 2016. DSMF ¶ 13.  Palacio met with Plaintiff regularly, provided guidance, and requested that she improve her performance.  *Id.* ¶ 14.

### A.    Plaintiff's Failure to Update the Case Management System

When OHR receives a complaint of discrimination, the case moves through intake, mediation, and if necessary, investigation, legal review, and conciliation.  *Id.* ¶ 17.  Mediation is mandatory in all OHR cases.  *Id.* ¶ 18.

One of Plaintiff's responsibilities as the Mediation Manager was to maintain information about mediations in OHR's case management system, which is called "MATS."  *Id.* ¶ 15.  It is the responsibility of every manager in OHR to ensure that his or her team timely and reliably enters case updates in MATS.  *Id.* ¶ 16.

In Palacio's view, it is crucial that case updates be entered in MATS promptly to ensure that cases are resolved efficiently.  DSMF ¶ 19.  According to Palacio, because mediation is mandatory in all OHR cases, it is critical that updates in a case's mediation status be promptly entered in MATS so that OHR's Investigations Unit knows whether a case has or has not been settled so that the assigned investigator knows whether to continue the investigation.  *Id.* ¶ 20.  The failure to promptly enter updates in mediation cases in MATS resulted in inefficiencies in OHR's management of cases.  *Id.* ¶ 21.

Accordingly, Palacio asked Plaintiff to update mediation matters in MATS within 24-48 hours of any change in case status.  *Id.* ¶ 22.  However, Plaintiff did not consistently enter updates in MATS in a timely manner as directed by Palacio.  *Id.* ¶ 23.  According to Palacio, this caused investigators to needlessly continue to investigate a case that had been resolved in mediation weeks

or months earlier because the case had not been updated in the system.  *Id.* ¶ 24.  In addition, because mediations are confidential, the agency was dependent on Plaintiff to update information about the Mediation Unit's cases in MATS.  *Id.* ¶ 25.

### B.  Plaintiff's Mismanagement of Staff and Poor Judgment

Palacio believed that Plaintiff demonstrated poor judgment and management of her staff. DSMF ¶ 26.  One example of this is when a full-time staff mediator under Plaintiff's supervision resigned from OHR, she informed Palacio that Plaintiff had not been assigning her enough work. *Id.* ¶ 27.  Palacio discovered that Plaintiff was relying more on contract mediators and not sufficiently utilizing the staff mediator, unnecessarily costing the agency more money.  *Id.* ¶ 28.

According to Palacio, Plaintiff also demonstrated poor judgment and management in the hiring and management of another mediator who was previously working at OHR as a contract mediator.  *Id.* ¶ 29.  Upon Plaintiff's strong recommendation, Palacio approved hiring him as a full-time staff mediator.  *Id.* ¶ 30.  However, serious problems emerged with this mediator shortly after he was hired.  *Id.* ¶ 31.  Palacio was informed that he slept in his office, was disrespectful to Plaintiff, and was unable to effectively use his desktop computer.  DSMF ¶ 32.

Palacio confronted Plaintiff about these issues and Plaintiff admitted that she could no longer manage him.  *Id.* ¶ 33.  Plaintiff prepared a memorandum outlining her concerns about the mediator.  *Id.* ¶ 34.  Palacio terminated the mediator's employment based on the information provided by Plaintiff in her memorandum.  *Id.* ¶ 35.

### C.  Plaintiff's Attendance and Behavior at Office Meetings.

Plaintiff failed to attend several regularly scheduled management meetings and staff meetings or would arrive late.  *Id.* ¶ 36.  As the management and staff meetings were held on the

4

first and second Tuesday of every month, respectively, in Palacio's view, there was no excuse for Plaintiff's failure to attend.  *Id.* ¶ 37.

In addition, when Plaintiff did attend meetings, she often made unproductive and disrespectful comments.  DMSF ¶ 38.  For example, during one staff meeting, which was attended by OHR's staff of approximately 40 employees, when Palacio asked Plaintiff a question, she replied, "I don't have to answer that."  *Id.* ¶ 39.  Palacio found Plaintiff's response to be rude, unprofessional, and insubordinate.  *Id.* ¶ 40.

**Alleged Discrimination and Hostile Work Environment Based on Age**

Plaintiff asked Palacio for an additional administrative assistant to assist her in the Mediation Unit.  *Id.* ¶ 41.  However, the agency did not have sufficient funds in the budget to allocate to that, so Palacio did not approve Plaintiff's request.  *Id.* ¶ 42.  Plaintiff did have an administrative assistant, Eloisa Rocha.  *Id.* ¶ 43.  Rocha sometimes provided coverage at the front desk, but she was permanently assigned as the administrative assistant in the Mediation Unit and was available to assist Plaintiff.  *Id.* ¶ 44.

Contrary to Plaintiff's allegations that Palacio did not include her in hiring decisions in the Mediation Unit, Am. Compl. ¶ 20(a), during the time period when Palacio supervised Plaintiff, three staff mediators were hired in the Mediation Unit.  DSMF ¶ 45.  Plaintiff was involved in the decision to hire each of them.  *Id.* ¶ 46.

Plaintiff compares herself to Rahsaan Coefield, OHR's former Director of Investigations who also acted as the Deputy Director.  *Id.* ¶ 47.  He had approximately ten employees under his supervision.  *Id.* ¶ 48.  Because he managed two units, the Intake and Investigation Units, Palacio believes that staffing levels were appropriate based on the workload in those two units.  *Id.* ¶ 49. Moreover, Plaintiff had contract mediators available to her as well as staff mediators.  *Id.* ¶ 50.

5

Plaintiff further alleges that during a meeting with Palacio and Coefield in May 2016, Coefield said to her, "You annoy me and your unit's dysfunctional."  DSMF ¶ 51.  On May 12, 2016, Plaintiff sent an email to Palacio complaining of Coefield's alleged comments.  *Id.* ¶ 52.  In a subsequent email to Palacio, Plaintiff stated in regard to Coefield's alleged comments, "I do not know if it is because I am a woman, elderly, or that he simply doesn't like the way I look."  *Id.* ¶ 53. Coefield did not supervise Plaintiff.  *Id.* ¶ 54.

Plaintiff does not allege that Palacio made any remarks to Plaintiff that Plaintiff perceived to be discriminatory based on age.  *Id.* ¶ 55.

**<u>Plaintiff's Termination</u>**

In a memorandum dated September 20, 2016, Palacio recommended Plaintiff's termination to DCHR.  *Id.* ¶ 56.  In her memorandum, Palacio detailed three main reasons for Plaintiff's termination:  (1) Plaintiff's failure/refusal to follow OHR's case processing guidelines; (2) Plaintiff's failure to attend management meetings and/or collaborate with other managers; and (3) Plaintiff's poor professional judgment and ineffective/wasteful and punitive management decisions. *Id.* ¶ 57.  As the Mediation Manager, Plaintiff was an MSS employee.  DSMF ¶ 58.  MSS employees can be terminated at will.  *Id.* ¶ 59.  Plaintiff was notified of the separation of her employment on September 30, 2016.  *Id.* ¶ 60.

An existing OHR employee replaced Plaintiff as the Mediation Manager after her termination.  *Id.* ¶ 61.  This employee was over 40 years old when he was appointed as the Mediation Manager in late 2016.  *Id.* ¶ 62.

Plaintiff alleges that Palacio terminated several OHR employees because of their age.  *Id.* ¶ 63.  However, four of the five employees Plaintiff references were not terminated.  DSMF ¶ 64.  As Director, Palacio has terminated the employment of two employees who were over 40 years old.  *Id.*

6

¶ 65.  During her tenure as Director, she has also terminated three employees who were under 40 years old.  *Id.* ¶ 66.  All were terminated for legitimate business reasons.  *Id.* ¶ 67.

Palacio was not aware until Plaintiff filed this lawsuit that she had previously filed an EEOC charge in 2013.  *Id.* ¶ 68.  Palacio was 48 years old at the time of Plaintiff's termination in September 2016.  *Id.* ¶ 69.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  A fact is "material" if it can affect the substantive outcome of the litigation.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A dispute is "genuine" if sufficient evidence exists so that a reasonable jury could return a verdict for the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  The moving party bears the initial responsibility of identifying the portions of the record which show the lack of any genuine issue of material fact.  *Id*. at 323; *see* Fed. R. Civ. P. 56(c) (noting that the movant may cite "depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials").  In response, the non-moving party must similarly designate specific facts in the record that reveal a genuine issue that is suitable for trial.  *Celotex*, 477 U.S. at 324.

To defeat summary judgment, the non-moving party must "go beyond the pleadings and by his own affidavits, or by [the evidence in the record] designate specific facts showing that there is a genuine issue for trial." *Id.* (quotation marks omitted). The non-moving party's opposition "must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial." *Musgrove v. Dist. of Columbia*, 775 F. Supp. 2d 158, 164 (D.D.C. 2011) (citing Fed. R. Civ. P. 56(c)(1) and *Celotex*, 477 U.S. at 324).

## ARGUMENT

### I.    Plaintiff Cannot Establish a Title VII Retaliation Claim.

Plaintiff alleges that the District "solely because of Plaintiff's prior protected activity[] . . . deprived Plaintiff of equal opportunity by terminating Plaintiff's employment." Am. Compl. ¶ 38 (First Cause of Action). Plaintiff offers no direct evidence of retaliation, and she cannot establish a prima facie case of retaliation under Title VII because there is no causation between her 2013 EEOC charge and her 2016 termination. And to the extent Plaintiff alleges that her email to Palacio complaining about Coefield's alleged behavior during a meeting supports a retaliation claim, the claim cannot stand because that email is not protected activity. Moreover, the District had legitimate, non-retaliatory reasons for Plaintiff's termination. Therefore, the Court should grant summary judgment to the District on Plaintiff's Title VII retaliation claim.

### A.    Plaintiff Cannot Establish a Prima Facie Case of Retaliation.

"A plaintiff claiming unlawful retaliation must prove her case under the burden-shifting framework established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)." *Broderick v. Donaldson*, 437 F.3d 1226, 1231 (D.C. Cir. 2006) (citing *Smith v. Dist. of Columbia,* 430 F.3d 450, 455 (D.C .Cir. 2005)). Under this framework, "[f]irst, the plaintiff has the burden of

proving by the preponderance of the evidence a prima facie case of discrimination.  Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the [adverse employment action]. Third, should the defendant carry this burden, the plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)) (internal quotation marks omitted).  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Burdine*, 450 U.S. at 253 (citations omitted).

"Title VII's antiretaliation provision forbids employer actions that discriminate against an employee because she has opposed a practice that Title VII forbids or has made a charge, testified, assisted, or participated in a Title VII investigation, proceeding, or hearing."  *Hoskins v. Howard Univ.*, 839 F. Supp. 2d 268, 279 (D.D.C. 2012); *see* 42 U.S.C. § 2000e-3(a).  "To establish a prima facie case of retaliation, a [plaintiff] must show that (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse action by her employer; and (3) a causal connection existed between the two."  *Wiley*, 511 F.3d at 155 (citing *Brown v. Brody,* 199 F.3d 446, 452 (D.C. Cir. 1999)).

"For purposes of establishing a prima facie case of retaliation, temporal proximity can . . . support an inference of causation, but only where the two events are very close in time." *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012).  The Supreme Court has held a three-month period between protected activity and adverse action to be insufficient to show

causation. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).[1]  "The D.C. Circuit

has held that ten months, eight months, and two and a half months were not close enough for

temporal proximity." *Nunnally v. Dist. of Columbia*, 243 F. Supp. 3d 55, 67 (D.D.C. 2017)

(citations omitted).  While there is no "bright-line three-month rule," *Hamilton*, 666 F.3d at

1358, "'three months is perceived as approaching the outer limit.'"  *McNair v. Dist. of Columbia*,

213 F. Supp. 3d 81, 89 (D.D.C. 2016) (quoting G*reer v. Bd. of Trustees of Univ. of Dist. of

Columbia*, 113 F. Supp. 3d 297, 311 (D.D.C. 2015)).

In this case, Plaintiff cannot show causation between her 2013 EEOC charge and her

2016 termination because the events are too remote in time.  More than *three years* elapsed

between the filing of Plaintiff's EEO charge and her termination.  The events are simply too

attenuated to show causation and Plaintiff offers no other evidence of retaliation.  Therefore,

Plaintiff cannot meet her burden to establish a prima facie case.  *See Gilbert v. Napolitano*, 670

F.3d 258, 263 (D.C. Cir. 2012) (no causal link established where the protected activity of

litigation took place more than three years before the alleged retaliatory conduct of failing to

recommend the plaintiff for promotion); *Morrison v. Mills*, 928 F. Supp. 2d 241, 248 (D.D.C.

2013) ("Morrison's protected activity lacks the requisite temporal proximity to the non-transfer

because even the most recent activity . . . occurred three years before the non-transfer.")

(citations omitted); *see also Brodetski v. Duffey*, 199 F.R.D. 14, 20 (D.D.C. 2001) ("Although

---

[1]  "Although the Supreme Court has cited circuit decisions suggesting that in some instances a three-month period between the protected activity and the adverse employment action may, standing alone, be too lengthy to raise an inference of causation, neither the Supreme Court nor [the D.C. Circuit] has established a bright-line three-month rule.  Instead, [the Circuit has] evaluated the specific facts of each case to determine whether inferring causation is appropriate." *Hamilton v. Geithner*, 666 F.3d 1344, 1357-58 (D.C. Cir. 2012) (citing *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273-74 (2001), and *Taylor v. Solis,* 571 F.3d 1313, 1322 (D.C. Cir. 2009) (two-and-a-half month interval insufficient to overcome employer's asserted non-retaliatory explanation "on the record [in that case]")).

courts have not established the maximum time lapse between protected Title VII activity and alleged retaliatory actions for establishing a causal connection, courts . . . seldom have accepted time lapses outside of a year in length.") (collecting cases).

Furthermore, Palacio was not aware of Plaintiff's EEOC charge at the time of Plaintiff's termination – she did not learn of it until Plaintiff brought this lawsuit.  DSMF ¶ 68.  "Employer awareness that the employee is engaged in protected activity is . . . essential to making out a prima facie case for retaliation."  *Howard Univ. v. Green*, 652 A.2d 41, 46 (D.C. 1994) (citing *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)).  Plaintiff offers nothing more than rank speculation that Palacio was aware of the EEOC charge.  She claims that Palacio knew about her EEOC charge because Palacio was in staff meetings with Velasquez and "[s]he and Velasquez were rather close."  Ex. 1, Deposition of Georgia Stewart, Nov. 8, 2018 (Stewart Dep.) at 80:3-9.  Plaintiff's unsupported suppositions are insufficient to defeat summary judgment.  *See Maramark v. Spellings*, No. 01-cv-2206 (CKK), 2006 WL 276979, at *23 (D.D.C. Feb. 3, 2006) ("conjecture, supposition, and speculation" are "insufficient . . . to defeat a motion for summary judgment").  Thus, Plaintiff cannot establish a prima facie retaliation claim based on the 2013 EEOC charge, and the District is entitled to summary judgment on Plaintiff's Title VII retaliation claim.

To the extent that Plaintiff claims that her email to Palacio complaining about Coefield's alleged comments supports her retaliation claim, the claim fails because the email does not constitute protected activity.  "Because Title VII's anti-retaliation provision requires 'opposition' to an unlawful employment practice, an employee 'must in some way allege unlawful discrimination' for her conduct to qualify as protected activity."  *Touvian v. Dist. of Columbia*, 330 F. Supp. 3d 246, 251 (D.D.C. 2018) (quoting *Broderick v. Donaldson*, 437 F.3d 1226, 1232

11

(D.C. Cir. 2006)). Plaintiff's email to Palacio does not allege that Coefield was discriminating against her. To the contrary, Plaintiff merely speculated that Coefield may have been motivated by discrimination, stating "I do not know if it is because I am a woman, elderly, or that he simply doesn't like the way I look." Ex. 8, June 17, 2016 email from Georgia Stewart to Monica Palacio. This email is not protected activity. *See Broderick*, 437 F.3d at 1232 (plaintiff's memo to supervisor not protected activity because she "did not allege in her memo that she was currently being discriminated against"). Plaintiff cannot establish a prima facie Title VII retaliation claim. Thus, the District is entitled to summary judgment and the Court should dismiss the Amended Complaint's First Cause of Action.

### B. The District Has Legitimate, Non-Retaliatory Reasons for Plaintiff's Termination.

Moreover, the District has legitimate, non-retaliatory reasons for Plaintiff's termination and no reasonable jury could find these reasons to be pretextual.[2] Plaintiff was terminated because of her poor performance. *See* Ex. 9, Sept. 20, 2016 Memorandum from Monica Palacio to Margaret Radabaugh; DSMF ¶¶ 56-57; Palacio Decl. ¶¶ 5-12. The reasons for Plaintiff's termination are three-fold: Plaintiff (1) failed to timely and consistently update mediation cases in MATS, (2) mismanaged her staff and showed poor judgment in recommending that Grimes be hired, and (3) failed to attend or was late for management and all-staff meetings and made unproductive and disrespectful comments when she did attend. *See* Ex. 9, Sept. 20, 2016

---

[2] "[The D.C.] Circuit has ruled . . . that '[i]n a ... suit where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not—*and should not*—decide whether the plaintiff actually made out a prima facie case.' Instead, the district court should determine whether the employee 'produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee' on the basis of a protected trait or activity." *Davis v. George Washington Univ.*, 26 F. Supp. 3d 103, 118-19 (D.D.C. 2014) (quoting *Brady v. Office of Sergeant at Arms,* 520 F.3d 490, 494 (D.C. Cir. 2008)).

Memorandum from Monica Palacio to Margaret Radabaugh; DSMF ¶¶ 56-57; Palacio Decl. ¶¶ 5-12.  It is well settled that "[p]oor work performance is a legitimate reason for terminating an employee."  *Gonda v. Donahoe*, 79 F. Supp. 3d 284, 295 (D.D.C. 2015) (citing *George v. Leavitt,* 407 F.3d 405, 412 (D.C. Cir. 2005); *Kelly v. Mills,* 677 F. Supp. 2d 206, 224 (D.D.C. 2010)).

No reasonable jury could find the District's reason to be a pretext for retaliation.  There is no genuine dispute of fact that Palacio had no knowledge of Plaintiff's EEOC charge at the time of her termination, and moreover, the termination occurred over three years after Plaintiff filed the charge.  Accordingly, the District is entitled to summary judgment on Plaintiff's Title VII retaliation claim.

## II.      Plaintiff Cannot Establish an ADEA Claim.

Plaintiff alleges that "solely because of Plaintiff's age, she was subjected her to a hostile work environment, was treated different from younger supervisors, and was terminated" because of her age in violation of the ADEA.  Am. Compl. ¶ 40.  Plaintiff cannot establish an age discrimination claim or a hostile work environment claim based on age.  Accordingly, the Court should grant summary judgment in the District's favor on the Amended Complaint's Second Cause of Action.

### A.      Plaintiff Cannot Establish an ADEA Claim for the Termination of Her Employment.

"The ADEA makes it 'unlawful for an employer . . . to fail or refuse to hire or discharge . . . or discriminate against any individual who is at least forty (40) years old . . . because of such individual's age.'"  *Singleton v. Potter*, 402 F. Supp. 2d 12, 25 (D.D.C. 2005) (quoting 29 U.S.C. § 623(a)(1)).  Plaintiff does not offer direct evidence of discrimination, and thus must establish a prima facie case of discrimination.  *Chisholm v. D.C.*, 666 F. Supp. 2d 96, 104 (D.D.C. 2009).

13

"To establish a *prima facie* case of age discrimination under the ADEA, the plaintiff must demonstrate 'facts sufficient to create a reasonable inference that age discrimination was a determining factor in the employment decision.'" *Jones v. Bernanke*, 493 F. Supp. 2d 18, 27 (D.D.C. 2007) (quoting *Cuddy v. Carmen,* 694 F.2d 853, 856-57 (D.C. Cir. 1982)), *aff'd in part and rev'd in part on other grounds*, 557 F.3d 670 (D.C. Cir. 2009). "[A] plaintiff can state a *prima facie* case of age discrimination in a termination decision by coming forward with evidence showing that he (i) was 40 or older, and so falls within the ADEA's protective reach; (ii) was otherwise qualified for the position in which he was working; (iii) was terminated; and (iv) was replaced by someone younger." *Steele v. Mattis*, 899 F.3d 943, 945 (D.C. Cir. 2018) (citations omitted).

If a plaintiff can make this showing, "the burden of production shifts to the employer to come forward with a legitimate non-discriminatory reason for the discharge. If the employer does so, the burden-shifting paradigm disappears, and the sole remaining issue is discrimination *vel non*. At all times, the plaintiff bears the burden of proving that age discrimination occurred." *Id.* (brackets, citations, and internal quotation marks omitted).

Plaintiff cannot make a prima facie showing of age discrimination because the undisputed facts show that age was not a "determining factor" in her termination. *Jones*, 493 F. Supp. 2d at 27. In fact, the person who replaced Plaintiff as the Mediation Manager was over 40 years old when he was appointed. DSMF ¶¶ 61-62. Thus, Plaintiff cannot establish a prima facie claim for termination based on age discrimination.

Furthermore, as discussed in Section I.B, *supra*, the District had a legitimate, non-discriminatory reason for Plaintiff's termination – her poor performance. "Failure to meet the standard of work required by an employer is undoubtedly a facially legitimate basis for

14

terminating an employee." *Johnson v. Dist. of Columbia*, 99 F. Supp. 3d 100, 105 (D.D.C. 2015) (citations omitted), *aff'd*, 688 F. App'x 4 (D.C. Cir. 2017).  No reasonable jury could find the District's stated reasons to be pretextual as Plaintiff was not "replaced by someone younger." *Steele*, 899 F.3d at 945.

Plaintiff also alleges that she "was treated different from younger supervisors," Am. Compl. ¶ 40, but the undisputed facts show that this is not the case.  Plaintiff compares herself to Coefield, a younger supervisor who she claims was treated more favorably than her.  DSMF ¶ 47.  To show that she was similarly situated to a younger employee, Plaintiff "must . . . demonstrate that 'all of the relevant aspects of her employment situation were nearly identical to those of the [younger] employee." *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015) (quoting *Holbrook v. Reno,* 196 F.3d 255, 261 (D.C. Cir. 1999)), *cert. denied*, 136 S. Ct. 1685 (2016).  Plaintiff cannot make this showing.  Coefield supervised two units in OHR, Intake and Investigations, whereas Plaintiff supervised one unit.  DSMF ¶ 49.  In addition, Coefield acted as Deputy Director.  *Id.* ¶ 47.  Plaintiff complains that Coefield had more employees assigned to his supervision than her, Ex. 1, Stewart Dep. at 95:1-9, but Coefield's greater responsibilities in leading two units and serving as Deputy Director justified him having more staff than Plaintiff.  DSMF ¶ 49.  Coefield was not similarly situated to Plaintiff.  "In the absence of evidence that the comparators were actually similarly to [Plaintiff] an inference of falsity or discrimination is not reasonable." *Montgomery v. Chao*, 546 F.3d 703, 707 (D.C. Cir. 2008) (citation and quotation marks omitted).

Moreover, the undisputed facts show that most of the older employees who Plaintiff alleges Palacio fired were not terminated at all.  DSMF ¶¶ 63-64.  In addition, during her tenure as Director, Palacio has terminated more employees who are under 40 years old than those who

15

are older and thus has shown no favoritism to younger workers. *Id.* ¶¶ 65-66. Furthermore, as stated above, Plaintiff was replaced with another employee who was over 40 years old when he was appointed. *Id.* ¶¶ 61-62. On this record, Plaintiff cannot show that the District's reasons for her termination are a pretext for age discrimination. Therefore, Plaintiff's ADEA discrimination claim cannot stand and the Court should grant summary judgment to the District.

 **B.**  <u>**Plaintiff Fails to State an ADEA Claim for a Hostile Work Environment.**</u>

 "The bar for demonstrating a hostile work environment is a high one: a plaintiff must show that his employer subjected him to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. This standard prevents Title VII from becoming a general civility code and filters out complaints attacking the ordinary tribulations of the workplace. Even a few isolated incidents of offensive conduct do not amount to actionable harassment." *Achagzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164, 183 (D.D.C. 2016) (brackets, citations, and quotation marks omitted). "Assuming that a hostile work environment claim can be brought under the ADEA, the same standard [as under Title VII] would apply." *Id.* (quoting *Ware v. Hyatt Corp.*, 80 F. Supp. 3d 218, 227 (D.D.C. 2015)).

 "In applying this standard, courts consider all the circumstances: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating; and whether it unreasonably interferes with an employee's work performance. Isolated incidents (unless extremely serious) are usually insufficient." *Blackwell v. SecTek, Inc.*, 61 F. Supp. 3d 149, 162 (D.D.C. 2014) (brackets, citations, ellipses, footnote, and internal quotation marks omitted). Moreover, "[t]he bar for demonstrating a hostile work environment [under the ADEA] is a high one[.] . . . Under this demanding standard, . . . the ADEA do[es] not function as [a]

16

general civility code[] that regulate[s] the ordinary tribulations of the workplace." *Nichols v. Young*, No. 13-cv-1502 (RDM), 2017 WL 1131873, at *5 (D.D.C. Mar. 24, 2017) (citations and internal quotation marks omitted).

Plaintiff claims the following alleged acts by Palacio created a hostile work environment in violation of the ADEA:

- Not making Plaintiff aware of staff meetings, Ex. 1, Stewart Dep. at 92:7-9;

- Not providing Plaintiff with an additional administrative assistant, *id.* at 92:9-16;

- Not allowing Plaintiff to have input in hiring decisions in the Mediation Unit, *id.* at 92:18-94:3; and

- Assigning more employees to Coefield's supervision than were assigned to Plaintiff's unit, *id.* at 95:1-19.

As an initial matter, the record establishes that Plaintiff *was* made aware of staff meetings and *was* involved in the hiring decision in the Mediation Unit.  *See* DSMF ¶¶ 36-37, 45-46; Ex. 6, Email correspondence regarding staff meetings.  In any event, Plaintiff's allegations "simply do not rise to the level of the 'severe or pervasive' harassment required for a hostile work environment." *Blackwell*, 61 F. Supp. 3d at 163.  "[T]he alleged actions are not 'extremely serious,' nor did they create 'an abusive work environment,' so they cannot be considered to constitute a hostile work environment standing alone.  Considering 'all the circumstances,' the conduct alleged . . . is simply not severe or pervasive enough to have 'altered the conditions of [Plaintiff's] employment.'" *Id.*  (brackets and citations omitted).

Moreover, "[t]o assert a claim for hostile work environment, the plaintiff must demonstrate some linkage between the hostile behavior and the plaintiff's membership in a protected class." *Moore v. Castro*, 192 F. Supp. 3d 18, 46 (D.D.C. 2016) (citation and internal quotation marks omitted).  The undisputed record establishes that there is no evidence that

17

Palacio treated any employee more or less favorably because of age.  Palacio replaced Plaintiff with another employee over the age of 40.  DSMF ¶¶ 61-62.  Further, Palacio has terminated more employees under 40 years old than those who were over 40.  *Id.* ¶¶ 65-66.  Therefore, Plaintiff fails to establish a hostile work environment claim under the ADEA.  Accordingly, the Court should grant summary judgment in the District's favor and dismiss the Amended Complaint's Second Cause of Action.

## CONCLUSION

For the foregoing reasons, the Court should grant the District's motion for summary judgment and dismiss the Amended Complaint with prejudice.

Date: May 10, 2019                                     Respectfully Submitted,

                                                      KARL A. RACINE
                                                      Attorney General for the District of Columbia

                                                      CHAD COPELAND
                                                      Acting Deputy Attorney General
                                                      Civil Litigation Division

                                                      */s/ Glenn T. Marrow*
                                                      GLENN T. MARROW [252713]
                                                      Chief, Civil Litigation Division Section II

                                                      */s/ Christina Okereke*
                                                      CHRISTINA OKEREKE [219272]
                                                      Assistant Attorney General
                                                      441 Fourth Street, N.W.
                                                      Suite 630 South
                                                      Washington, D.C. 20001
                                                      (202) 727-5173 (Telephone)
                                                      (202) 715-7767 (Fax)
                                                      christina.okereke@dc.gov

                                                      *Counsel for Defendant District of Columbia*

18

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GEORGIA A. STEWART, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )    No. 17-cv-495 (CKK) |
| | ) |
| DISTRICT OF COLUMBIA, | ) |
| | ) |
|     Defendant. | ) |

**ORDER**

Upon consideration of the Defendants' Motion for Summary Judgment, the statement of undisputed material facts, memorandum of points and authorities, declaration, and exhibits attached thereto, any opposition and reply thereto, and the entire record herein, it is this _____ day of _____, 2019;

    **ORDERED** that Defendants' Motion is **GRANTED**; and it is further

    **ORDERED** that the Amended Complaint is dismissed **WITH PREJUDICE**.

**SO ORDERED.**

                              _____
                              COLLEEN KOLLAR-KOTELLY
                              United States District Judge

Copies to:

| | |
|---|---|
| John W. Davis | Christina Okereke |
| Law Offices of John W. Davis | Assistant Attorney General |
| 1629 K Street, NW | 441 Fourth Street, N.W. |
| Suite 300 | Suite 630 South |
| Washington, D.C. 20006 | Washington, D.C. 20001 |
| *Counsel for Plaintiff* | *Counsel for Defendants* |