**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

GEORGIA A. STEWART,               )
                                  )
    Plaintiff,             )
                                  )
v.                                )          No. 17-cv-495 (CKK)
                                  )
DISTRICT OF COLUMBIA,             )
                                  )
    Defendant.             )

**<u>DECLARATION OF MONICA PALACIO</u>**

    I, MONICA PALACIO, pursuant to 28 U.S.C. § 1746, declare that the following is true and correct to the best of my knowledge and belief:

1.    I am the Director of the D.C. Office of Human Rights (OHR). I became the Interim Director in November 2013 and became the permanent Director upon my confirmation by the City Council in March 2014.

2.    Plaintiff Georgia Stewart was the Mediation Manager at OHR. I was Ms. Stewart's direct supervisor upon my appointment as Interim Director in November 2013 until the termination of her employment in September 2016.

3.    Ms. Stewart's duties and responsibilities as the Mediation Manager were to ensure that mediations were conducted in a timely fashion and that mediations were handled productively and efficiently. Ms. Stewart was also responsible for maintaining information about mediations in the agency's case management system. Finally, like all employees, Ms. Stewart was responsible for not committing government waste and to use government resources responsibly.

4.    After I became Ms. Stewart's supervisor, she complained that she had not received a raise in several years. Therefore, in August 2015, I made a request to the D.C. Department of Human Resources (DCHR) for a 10% increase to Ms. Stewart's salary, which DCHR approved.

Ms. Stewart also requested a television in her office to keep abreast of the news and a flexible schedule to allow her to come in later or to modify her schedule as needed. I approved both.

5. However, performance issues with Ms. Stewart began to emerge in early 2015 to early 2016.

6. OHR has a case management system called "MATS." It is crucial that case updates be entered in MATS promptly to ensure that cases are resolved efficiently. When OHR receives a complaint of discrimination, the case moves through intake, mediation, and if necessary, investigation, legal review, and conciliation. Because mediation is mandatory in all OHR cases, it is critical that updates in a case's mediation status be promptly entered in MATS so that the Investigations Unit knows whether a case has or has not been settled so that the assigned investigator knows whether to continue the investigation.

7. I asked Ms. Stewart to update mediation matters in MATS within 24 - 48 hours of any change in a case's status. However, Ms. Stewart consistently failed to ensure that updates were entered in a timely fashion. This caused investigators to needlessly continue to investigate a case that had been resolved in mediation weeks or months earlier because the case had not been updated in the system.

8. Because mediations are confidential, the agency was dependent on Ms. Stewart to update information about her cases in MATS.

9. Ms. Stewart also demonstrated poor judgment, government waste, and management of her staff. When a staff mediator under Ms. Stewart's supervision resigned, she informed me that Ms. Stewart had not been assigning her enough work. I discovered that Ms. Stewart was relying more on contract mediators and not sufficiently utilizing the staff mediator, which unnecessarily cost the agency more money.

10.     Another instance of Ms. Stewart's poor judgment and management involved the hiring and management of a mediator. This mediator was previously working at OHR as a contract mediator, and Ms. Stewart strongly advocated that he be hired to replace the staff mediator who resigned. Based on Ms. Stewart's strong recommendation, I approved the hiring of the contract mediator as a full-time staff mediator. However, serious problems with this new staff mediator emerged shortly after he was hired. I was informed by OHR employees that he was seen sleeping in his office, that he was disrespectful to Ms. Stewart, and that he was not effectively able to use his desktop. I confronted Ms. Stewart and she admitted she could no longer manage the mediator. I then asked Ms. Stewart to draft a memorandum, outlining her concerns, and based on this memorandum, I terminated the mediator.

11.     Ms. Stewart also failed to attend several regularly scheduled management meetings and staff meetings or would arrive late. As the management and staff meetings were held on the first and second Tuesday of every month, respectively, there was no reason for Ms. Stewart's failure to attend.

12.     In addition, when Ms. Stewart did attend meetings, she often made unproductive and disrespectful comments. For example, during one staff meeting, which was attended by OHR's staff of approximately 40 employees, when I asked Ms. Stewart a question, she replied, "I don't have to answer that." I found her response to be rude, unprofessional, and insubordinate.

13.     Because of Ms. Stewart's mismanagement, by the time of her termination, there was a bottleneck of hundreds of cases that required mediation.

14.     Ms. Stewart requested an additional administrative assistant to assist her, but the agency did not have sufficient funds in the budget to allocate to that, so I did not approve that request. Ms. Stewart did have one administrative assistant, Eloisa Rocha. Ms. Rocha sometimes

provided coverage at the front desk, but she was permanently assigned as the administrative assistant in the Mediation Unit and was available to assist Ms. Stewart.

15.    It is my understanding that Ms. Stewart alleges in this case that I hired employees into the Mediation Unit without allowing her to have input in the decision.  This is not the case. During the time period that I supervised Ms. Stewart, three staff mediators were hired in the Mediation Unit and Ms. Stewart was involved in the decision to hire each of them.

16.    It is my understanding that Ms. Stewart compares herself in this case to a former Investigation Director/Deputy Director.  This manager was responsible for the Intake and Investigation Units and had approximately ten employees under his supervision.  The staffing levels for these two units were appropriate based on the workload.  Ms. Stewart also had contract mediators available to her as well as staff mediators.

17.    Ms. Stewart was replaced by another employee, who was over 40 years old when he was appointed as the Mediation Manager in late 2016.

18.    As Director, I am responsible for ensuring the agency is running efficiently and productively, which means I am charged with reviewing performance concerns, and taking appropriate personnel actions.  Unfortunately, during my tenure as Director, I have had to engage in separating employees for legitimate business reasons.  Of the separated individuals, one was a former general counsel (over 40 years old), another was the mediator (over 40 years old) discussed above, and three others (under the age of 40) were a data analyst, a compliance officer, and a manager.  All were separated for legitimate business reasons.

19.    It is my understanding that Ms. Stewart has stated that I terminated Jewell Little, Alexis Taylor, Alease Parson, and Diane Betz because of their age.  As explained below, Ms. Stewart is mistaken:

    a.   Jewell Little resigned and was not terminated.

    b.   Alexis Taylor resigned and was not terminated.

    c.   Alease Parsons resigned and was not terminated, and as recently as 2018, Ms. Parson worked for OHR on a contract basis.

    d.   I am not aware of who Diane Betz is, but OHR records do not indicate that she was terminated.

20.    I did not discriminate against Ms. Stewart because of her age or on any other basis.

21.    I was 48 years old at the time of Ms. Stewart's termination.

22.    I was not aware until Ms. Stewart filed this lawsuit that she had filed a previous charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) against the former OHR Director, Gustavo Velasquez.

23.    I did not retaliate against Ms. Stewart because she filed an EEOC charge against Mr. Velasquez or on any other basis.

24.    All actions I took with respect to Ms. Stewart were legitimate and based on her work performance.

5

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 10, 2019

_____
MONICA PALACIO