# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| GEORGIA A. STEWART,<br>    Plaintiff<br>      v.<br>DISTRICT OF COLUMBIA,<br>    Defendant | Civil Action No. 17-495 (CKK) |

## MEMORANDUM OPINION
(September 9, 2019)

This is an age discrimination and retaliation case brought by a former employee of the District of Columbia Office of Human Rights ("OHR"). Plaintiff Georgia Stewart alleges that she was was discriminated against and ultimately terminated due to her age and in retaliation for an earlier discrimination complaint. Plaintiff brings this lawsuit against the District of Columbia under the Age Discrimination in Employment Act ("ADEA") and Title VII of the Civil Rights Act ("Title VII").

Before the Court is Defendant District of Columbia's [25] Motion for Summary Judgment. Defendant claims that it is entitled to summary judgment on Plaintiff's retaliation claim because Plaintiff has failed to establish causation between her 2013 discrimination complaint and her 2016 termination. Defendant further claims that it is entitled to summary judgment on Plaintiff's age discrimination claim as Plaintiff has failed to produce evidence that Defendant's legitimate reasons for terminating Plaintiff are pretextual and because Plaintiff's allegations of a hostile work environment do not state sufficiently severe or pervasive conduct.

Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court GRANTS Defendant's motion. As to Plaintiff's retaliation claim, the Court concludes that the almost three years separating Plaintiff's 2013 discrimination charge from her 2016 termination is too long a duration to infer causation. And, Plaintiff has produced no other evidence showing Defendant's proffered, non-retaliatory reasons for its actions to be pretext for retaliation. Next, considering Plaintiff's claim of age discrimination, the Court concludes that Plaintiff has failed to show that Defendant's proffered, non-discriminatory reasons for its actions are pretextual, and Plaintiff has offered no evidence connecting Defendant's actions to age discrimination. Finally, in her Opposition to Defendant's Motion, Plaintiff provides no support for her hostile work environment claim, and the Court concludes that the claim fails as a matter of law.

## I. BACKGROUND

Plaintiff Georgia Stewart began her employment at the OHR in 1967. Def.'s Stmt. of Undisputed Material Facts, ECF No. 25 ("Def.'s Stmt."), at ¶ 2. During the relevant time period, Plaintiff was the Manager of the Mediation Unit at the OHR. *Id.* at ¶ 3.

In January 2013, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). *Id.* at ¶ 6. In her complaint, Plaintiff alleged

---

[1] The Court's consideration has focused on the following documents and their attachments and/or exhibits: Def. District of Columbia's Mot. for Summary Judgment, ECF No. 25 ("Def.'s Mot."); Pl.'s Opp'n to Def.'s Mot. for Summary Judgment, ECF No. 32 ("Pl.'s Opp'n"); Reply Mem. of Points and Authorities in Support of Def. District of Columbia's Mot. for Summary Judgment, ECF No. 34 ("Def.'s Reply"); Def.'s Supp. Reply Mem. of Points and Authorities in Support of Def. District of Columbia's Mot. for Summary Judgment, ECF No. 35 ("Def.'s Supp. Reply"); Pl. Georgia A. Stewart Res. to Def.'s Supp. Reply, ECF No. 39 ("Pl.'s Res. to Def.'s Supp. Reply"); and Def. District of Columbia's Reply to Pl.'s Res. to Def.'s Supp. Reply, ECF No. 40 ("Def.'s Reply to Pl.'s Res. to Def.'s Supp. Reply").

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

that her supervisor and then-Director of the OHR, Gustavo Valesquez, retaliated against her for previously engaging in a protected activity. *Id.* at ¶ 7.

In November of 2013, Monica Palacio became the Interim Director of the OHR and became the permanent Director in March 2014. *Id.* at ¶ 8. Upon her appointment as Interim Director, Ms. Palacio became Plaintiff's direct supervisor. *Id.* at ¶ 9.

In August 2015, Ms. Palacio submitted a request to the D.C. Department of Human Resources and obtained a 10% increase to Plaintiff's salary after Plaintiff informed Mr. Palacio that she had not received a raise in several years. *Id.* at ¶¶ 10-11. Ms. Palacio also approved Plaintiff for a flexible work schedule. *Id.* at ¶ 12.

Ms. Palacio states that she began to observe performance issues with Plaintiff in early 2015 to early 2016. Def.'s Stmt., ECF No. 25, ¶ 13. As the Mediation Manager, Plaintiff was responsible for maintaining and updating information about mediations in the case management system called "MATS." Def.'s Stmt., ECF No. 25, ¶ 15. When a complaint of discrimination is received by OHR, the case goes through intake, mediation, and if necessary, investigation, legal review, and conclusion. *Id.* at ¶ 17. It is crucial that MATS is updated regularly with mediation information so that OHR's Investigations Unit knows if a case has been settled or if an investigation is needed. *Id.* at ¶ 20. Ms. Palacio determined that the failure to regularly update MATS resulted in inefficiencies in OHR's case management. *Id.* at ¶ 21. As a result, Ms. Palacio requested that Plaintiff update MATS with mediation information within 24-48 hours of mediation. *Id.* at ¶ 22. Plaintiff failed to consistently update MATS in the timely manner requested. *Id.* at ¶ 23. Plaintiff does not dispute this failure, but instead argues that updating MATS in accord with Ms. Palacio's request was not possible due to workload constraints. Pl.'s Res., ECF No. 32, ¶ 23.

Sometime in approximately 2015 or 2016, Plaintiff requested an additional administrative assistant to assist with the workload. Def.'s Stmt., ECF No. 25, ¶ 41. But, Ms. Palacio did not approve the request citing insufficient funds. *Id.* at ¶ 42. Additionally, Plaintiff already had a permanent administrative assistant. However, this permanent administrative assistant also provided coverage for the front desk on occasion. *Id.* at ¶¶ 43-44.

In addition to issues around MATS, Ms. Palacio further determined that Plaintiff demonstrated poor judgment and management of her staff. *Id.* at ¶ 26. As an example of such mismanagement, when a full-time staff mediator under Plaintiff's supervision resigned from the OHR, she informed Ms. Palacio that Plaintiff had not assigned her enough work. *Id.* at ¶ 27. Additionally, Ms. Palacio determined that Plaintiff was relying too heavily on contract mediators, rather than on staff mediators, costing the agency additional money. *Id.* at ¶ 28. And, Ms. Palacio also found that Plaintiff demonstrated poor judgment in hiring an unqualified individual as a staff mediator. *Id.* at ¶ 29. Plaintiff recommended that this individual be hired; however, serious problems emerged shortly after the hiring. *Id.* at ¶ 31. These problems included that the individual slept in his office, was disrespectful to Plaintiff, and could not use his computer. *Id.* at ¶ 32. When Ms. Palacio confronted Plaintiff about this individual, Plaintiff admitted that she could not manage him. *Id.* at ¶ 33. Ms. Palacio requested that Plaintiff prepare a memorandum about her concerns pertaining to this individual, and Ms. Palacio terminated the individual's employment on the basis of this information. *Id.* at ¶¶ 34-35.

Finally, Ms. Palacio determined that Plaintiff had difficulties attending management and staff meetings and behaving appropriately. Plaintiff failed to attend several regularly scheduled management and staff meetings or would arrive late. *Id.* at ¶¶ 36-37. Plaintiff contests Defendant's argument, explaining that she failed to attend these meetings due to participation in

mediations. Pl.'s Res., ECF No. 32, ¶ 36. But, in Ms. Palacio's view, the failure to attend these

meetings on time was inexcusable as the meetings were regularly scheduled for the first and

second Tuesday of every month. Def.'s Stmt., ECF No. 25, ¶ 37. Additionally, when Plaintiff did

attend meetings, she made unproductive and disrespectful comments. *Id.* at ¶ 38. As an example,

when Ms. Palacio asked Plaintiff a question at a staff meeting with approximately 40 employees,

Plaintiff replied, "I don't have to answer that." *Id.* at ¶ 39.

In a September 20, 2016 memorandum, Ms. Palacio recommended Plaintiff's

termination. *Id.* at ¶ 56. In the memorandum containing detailed examples, Ms. Palacio requested

termination based on (1) Plaintiff's failure and refusal to follow case processing guidelines; (2)

Plaintiff's failure to attend management meetings or collaborate with other managers; and (3)

Plaintiff's poor professional judgment and ineffective or wasteful management decisions. *Id.* at ¶

57. Plaintiff was notified of her termination on September 30, 2016. *Id.* at ¶ 60. Plaintiff was

replaced as Mediation Manager by an existing OHR employee who was over 40 years old. *Id.* at

¶¶ 61-62.

Plaintiff filed a charge of discrimination with the EEOC and received a right-to-sue letter

on December 19, 2016. On March 17, 2017, Plaintiff filed this lawsuit. On November 6, 2017,

Court dismissed Plaintiff's intentional infliction of emotional distress claim and replaced the

individual Defendants Plaintiff had sued with the proper Defendant, the District of Columbia.

Nov. 6, 2017 Order, ECF No. 10. Following the Court's Order, Plaintiff filed an Amended

Complaint and the parties engaged in discovery. On May 10, 2019, Defendant filed for summary

judgment. Defendant's Reply in Support of its Motion for Summary Judgment included a request

that the Court strike or disregard seven exhibits relied upon by Plaintiff in her Opposition to

Defendant's Motion on the grounds that Plaintiff did not produce such documents during

discovery. The Court ordered additional briefing so that Plaintiff would have the opportunity to respond to Defendant's allegation. As will be further explained below, the Court concludes that Plaintiff committed a discovery violation in failing to produce these documents and that the documents should be disregarded. *See Supra* Sec. III.A. However, throughout this opinion, where relevant, the Court considers Plaintiff's non-produced documents because they do not lead the Court to a different result.

In addition to the above factual background, the Court also notes the following three disputes of fact which the Court concludes are either not material or not genuine. First, Defendant states that, sometime in 2015, Ms. Palacio approved a television for Plaintiff's office. Def.'s Stmt., ECF No. 25, ¶ 12. Plaintiff disputes the fact that Ms. Palacio approved a television for her office and contends that she already had a television in her office. Pl.'s Res. to Def.'s Stmt. Of Undisputed Material Facts ("Pl.'s Res."), ECF No. 32, ¶ 12. The Court concludes that this factual dispute is immaterial as neither party relies on this fact as evidence proving or disproving retaliation or age discrimination.

Second, Defendant contends that Ms. Palacio met with Plaintiff regularly, provided guidance, and requested that she improve her performance. Def.'s Stmt., ECF No. 25, ¶ 14. Plaintiff disputes this fact and contends that Ms. Palacio never made Plaintiff aware of any issues. Pl.'s Res., ECF No. 32, ¶¶ 13-14. However, Plaintiff later refers to an ongoing "conflicting issue between [Ms.] Palacio and [herself] about the frequency with which IMS cases should be verified and documented." Ex. A, ECF No. 32-1, ¶ 55. As such, the Court finds that this dispute is not genuine because, in her Declaration, Plaintiff admits that Ms. Palacio had informed her of concerns regarding Plaintiff's failure to follow case processing guidelines.

Moreover, this dispute is immaterial as Plaintiff does not argue that Ms. Palacio's alleged failure to make her aware of issues is probative of possible retaliation or discrimination.

Third, Plaintiff disputes that funding was the true reason for Ms. Palacio's refusal to hire an additional administrative assistant. Pl.'s Res., ECF No. 32, ¶ 42. However, the documents to which Plaintiff cites as evidence of the fact that budget constraints were not the true reason for the refusal to hire an additional administrative assistant concern the OHR's decisions to convert a mediator position into an investigator position and to remove a vacancy for a mediator. The documents say nothing about hiring an additional administrative assistant. Ex. H, ECF No. 32-1, 62-67. As Plaintiff has produced no evidence refuting Ms. Palacio's given reason for not hiring a second administrative assistant, this dispute is not genuine.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id.* Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the

materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *See Ass'n of Flight Attendants-CWA, AFL-CIO v. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in her favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

In recognition of the difficulty in uncovering clear evidence of discriminatory or retaliatory intent, the district court should approach summary judgment in an action for employment discrimination or retaliation with "special caution." *Aka v. Wash. Hosp. Ctr.*, 116

F.3d 876, 879-80 (D.C. Cir. 1997), *vacated on other grounds*, 156 F.3d 1284 (D.C. Cir. 1998) (*en banc*). Be that as it may, the plaintiff is not relieved of her burden to support her allegations with competent evidence. *Brown v. Mills*, 674 F. Supp. 2d 182, 188 (D.D.C. 2009). As in any context, where the plaintiff would bear the burden of proof on a dispositive issue at trial, at the summary judgment stage she bears the burden of production to designate specific facts showing that there exists a genuine dispute requiring trial. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). Otherwise, the plaintiff could effectively defeat the "central purpose" of the summary judgment device—namely, "to weed out those cases insufficiently meritorious to warrant . . . trial"—simply by way of offering conclusory allegations, speculation, and argument. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

### III. DISCUSSION

Defendant has moved for summary judgment on Plaintiff's retaliation and age discrimination claims. First, Defendant contends that Plaintiff's retaliation claim fails as a matter of law because there is no evidence of causation between Plaintiff's 2013 charge of discrimination and her 2016 termination. Second, Defendant argues that summary judgment should be granted on Plaintiff's age discrimination claim. Defendant contends that Plaintiff has failed to produce any evidence that she was terminated on account of her age and that Plaintiff's allegations are not substantial or pervasive enough to constitute a hostile work environment. The Court will address each argument in turn. However, prior to addressing Defendant's arguments in support of summary judgment, the Court will address Defendant's request that certain exhibits relied upon in Plaintiff's Opposition be stricken or disregarded based on discovery violations.

## A. Plaintiff's Discovery Violations

In its Reply in Support of its Motion for Summary Judgment, Defendant argues that the Court should strike or disregard Plaintiff's Exhibits B, D, F, I, J, K, and N because Plaintiff did not produce these documents during discovery. Def.'s Reply, ECF No. 34, 2. Defendant contends that Plaintiff's discovery violation prejudiced Defendant because Defendant was denied the chance to review the documents during discovery and examine Plaintiff and other witnesses about the documents. The Court will begin by briefly describing each of these exhibits. Plaintiffs' Exhibit B is Plaintiff's 2014-15 performance review; Exhibit D is a resignation letter from one of Plaintiff's subordinates and related emails; Exhibit F is an email thread regarding office televisions in the OHR; Exhibit I is the "Woodard Report," a report by an outside contractor commissioned by Ms. Palacio on the OHR's case management process; Exhibit J is email correspondence between the mediation department and OHR leadership regarding staffing and deadlines; Exhibit K is Plaintiff's 2013 charge of discrimination against her former supervisor, Gustavo Valasquez, and related emails; and Exhibit N is an email thread regarding OHR's 2014 intake backlog production plan. *See generally* Pl.'s Exs., ECF No. 32-1.

Defendant contends that none of the listed documents were produced during discovery despite the fact that the documents are relied upon by Plaintiff to support her claims and are responsive to Defendant's requests for production. Defendant's requests for production included requests for "[c]opies of all documents that provide factual support for the allegations in the Amended Complaint;" "[c]opies of all documents that provide factual support for the allegations that [Plaintiff] w[as] terminated from [her] employment or [was] otherwise treated unfavorably because of [her] age as alleged in the Amended Complaint;" "[c]opies of all correspondence between [Plaintiff] and any employee of the District relating to the allegations in the Amended

Complaint, including any copies of documents generated during [her] employment with the District regardless of whether [she] believe[s] the original or another copy is in the custody or control of the defendants;" "[a]ll documents regarding Plaintiff's job assignments, skill acquisition, job performance, benefits and pay rates for the last ten years;" "[a]ll documents filed by and/or on behalf of Plaintiff with any local, state, or federal agency relating to the allegations in the Amended Complaint…;" "[c]opies of any and all documents that [Plaintiff] intend[s] to use as evidence at trial;" and more. Def. District of Columbia's First Set of Requests for the Production of Documents to Pl. Georgia Stewart; ECF No. 35-1. The Court agrees with Defendant's arguments and finds that each of the non-produced exhibits was adequately and properly requested by Defendant and that each of the non-produced exhibits was relied upon by Plaintiff in an attempt to support her claims.

Because the documents were responsive to Defendant's production requests, which requested all documents providing factual support for Plaintiff's claims, the Court must next determine whether or not Plaintiff's failure to produce the documents until after the close of discovery is a violation. Pursuant to Federal Rule of Civil Procedure 37, "[i]f a party to fails to provide information … as required by Rule 26(a) or (e), the party is not allowed to use that information … to supply evidence on a motion … unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). Under Rule 26(a), a party must disclose "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii). If a party violates its obligation and fails to provide such information, "[t]he sanction of preclusion is 'automatic and mandatory' unless the party can show that the failure to disclose was 'either substantially justified or

harmless.'" *Armenian Assembly of America, Inc. v. Cafesjian*, 746 F. Supp. 2d 55, 66 (D.D.C. 2010) (quoting *Walls v. Paulson*, 250 F.R.D. 48, 53-54 (D.D.C. 2008)).

Here, Plaintiff produced seven exhibits for the first time on June 18, 2019, in opposition to Defendant's Motion for Summary Judgment. Given the Court's discovery deadline of April 1, 2019, there is no dispute that this late production of documents used to support Plaintiff's claims failed to comply with Plaintiff's discovery obligations. *See* Fed. R. Civ. P. 26(a)(1)(A)(ii) (requiring disclosure of all documents that a party may use to support its claims); *see* March 26, 2019 Order, ECF No. 24 (setting April 1, 2019 as the deadline for discovery). As such, the Court shall preclude consideration of these exhibits unless Plaintiff can show that her failure to disclose was substantially justified or harmless. *See* Fed. R. Civ. P. 37(c)(1).

Plaintiff's Response to Defendant's discovery violation allegations is factually sparse and completely devoid of legal analysis. *See generally* Pl.'s Res. to Def.'s Supp. Reply, ECF No. 39. Plaintiff states that "Exhibit B should have been included in Ms. Stewart's official personnel file but was deliberately omitted by the Defendant to prejudice the Court" and that "Exhibit I, the Woodward Report, is an official document which appears on the OHR public website." *Id.* at 3. The only other explanation offered by Plaintiff is that "[a]ll other exhibits were contained on Plaintiff Georgia A. Stewart's OHR computer which the OHR took control of immediately upon Georgia Stewart's termination." *Id.* at 3-4. The Court concludes that none of these arguments show that Plaintiff's failure to produce the documents was substantially justified or harmless.

First, Plaintiff argues that Exhibit B, Plaintiff's 2014-15 performance review, should have been included in her personnel file but was deliberately omitted. The relevance of this allegation is not apparent to the Court. Insofar as Plaintiff appears to be accusing Defendant of misconduct, this allegation is completely unsupported by evidence. Plaintiff did not previously allege that

Defendant had failed to produce her full personnel file. In fact, Plaintiff never made any complaint about Defendant's document production nor did she argue that, lacking needed discovery, she could not properly oppose Defendant's Motion for Summary Judgment. This conclusory allegation is a red herring, attempting to distract from Plaintiff's own discovery violations.

Second, Plaintiff contends that Exhibit I, the "Woodard Report," a report commissioned by Ms. Palacio on the OHR's case management process, was publicly available on Defendant's website. However, the fact that this document was publicly available does not obviate Plaintiff's discovery obligations. "'[E]ven if a document is publicly available or in the opposing party's possession, a party must still disclose it under Rule 26(a)(1)(A) to provide notice of evidence central to its claims or defenses.'" *Shatsky v. Syrian Arab Republic*, 312 F.R.D. 219, 224 (D.D.C. 2015) (quoting *Martino v. Kiewit N.M. Corp.*, 600 Fed. App'x 908, 911 (5th Cir. 2015)). Regardless of Defendant's possible knowledge of the Woodard Report, Plaintiff was obligated to provide notice of the documents on which she intended to rely. *See United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958) (explaining that litigation is not a game of "blind man's buff"). Defendant was not obligated "to scour the public domain for nuggets of information that [Plaintiff] could potentially use against [it]—a task that is as Herculean as it is nonsensical." *Shatsky*, 312 F.R.D. at 224. Where Plaintiff intended to use a document to support her claims, and that document was encompassed by Defendant's requests for production, the Court finds that Plaintiff was obligated to produce the document during discovery.

Finally, Plaintiff argues that all of the other non-produced exhibits were on her work computer, which Defendant took possession of upon Plaintiff's termination. Again, the relevance of this statement is unclear. If Plaintiff is attempting to argue that she did not have access to the

documents in order to produce them during discovery, Plaintiff fails to explain how she was able to access the documents in support of her Opposition to Defendant's Motion for Summary Judgment but unable to access the documents to produce them during discovery. Moreover, Plaintiff never previously alleged that she did not have access to the documents necessary to respond to Defendant's document requests. If Plaintiff is attempting to argue that she was not required to produce the documents because they were in Defendant's control, that argument is similarly flawed. Even if the documents were in Defendant's control, pursuant to Federal Rule of Civil Procedure 26, Plaintiff still had an obligation to provide notice of the evidence which would be used to support her claims. Fed. R. Civ. P. 26(a)(1)(A)(ii). The Court finds that this obligation is especially strong where Defendant explicitly requested, among other documents, "[c]opies of all correspondence between [Plaintiff] and any employee of the District relating to the allegations in the Amended Complaint, including any copies of documents generated during [her] employment with the District *regardless of whether [she] believe[s] the original or another copy is in the custody or control of the defendants*." Def. District of Columbia's First Set of Requests for the Production of Documents to Plaintiff Georgia Stewart; ECF No. 35-1 (emphasis added).

Accordingly, the Court concurs with Defendant's arguments and concludes that Plaintiff was obligated to disclose Exhibits B, D, F, I, J, K, and N to Defendant and failed to do so during discovery. Plaintiff has also failed to establish that this omission was substantially justified or harmless. As such, the Court concludes that these Exhibits should be disregarded in ruling on Defendant's Motion for Summary Judgment.

While the Court has determined that Plaintiffs' discovery violations merit the exclusion of these documents, for the sake of thoroughness, the Court will consider Plaintiff's Exhibits B,

D, F, I, J, K, and N where relevant in ruling on Defendant's Motion for Summary Judgment. Even considering these documents, for reasons that will be explained below, the Court concludes that Defendant is entitled to summary judgment on all of Plaintiff's claims.

## B. Retaliation Claim

In order to state a claim of retaliation under Title VII, the plaintiff must allege a protected activity, a materially adverse action, and a causal link between the two. *Allen v. Johnson*, 795 F.3d 34, 39 (D.C. Cir. 2015). Title VII protects from retaliation those who have participated in filing a discrimination action and those who have opposed employment practices reasonably believed to be discriminatory. *See* 29 U.S.C. § 623(d). The plaintiff must allege that she engaged in one of these types of protected activity and that she experienced a materially adverse action because she engaged in that activity.

Title VII retaliation claims are assessed pursuant to the burden-shifting framework originally set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). *See Broderick v. Donaldson*, 437 F.3d 1226, 1231 (D.C. Cir. 2006) (explaining that retaliation claims are subject to the *McDonnell Douglas* analysis). First, to allege a prima facie case, a plaintiff must show that "(1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse action by her employer; and (3) a causal connection existed between the two." *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007). Once the plaintiff has made a prima facie case, "the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the [employment action that is challenged].'" *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802). After the employer has proffered a nonretaliatory reason, the *McDonnell Douglas* burden-shifting framework disappears, and the court is left to determine whether the plaintiff has put forth enough evidence to defeat the defendant's proffer and support

a finding of retaliation. *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 493-94 (D.C. Cir. 2008). On a motion for summary judgment, "the district court should determine whether the employee 'produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee' on the basis of a protected trait or activity." *Davis v. George Washington Univ.*, 26 F. Supp. 3d 103, 118-19 (D.D.C. 2014) (quoting *Brady*, 520 F.3d at 494).

Here, Plaintiff contends that she was retaliated against by Defendant due to the charge of discrimination that she filed in 2013 and settled in 2014. It is not clear what acts Plaintiff alleges that Defendant took in retaliation for her 2013 charge of discrimination. In her Amended Complaint, Plaintiff states that Defendant discriminated against her by hiring employees without Plaintiff's input, terminating employees without Plaintiff's input, failing to fully staff the OHR Mediation Unit, failing to provide the OHR Mediation Unit with necessary tools and equipment, assigning work to the Mediation Unit staff without Plaintiff's input, giving preferential treatment to younger supervisors, and terminating Plaintiff. Compl., ECF No. 11, ¶ 20. But, in her Opposition to Defendant's Motion for Summary Judgment, Plaintiff appears to base her retaliation claim entirely on her termination. Pl.'s Opp'n, ECF No. 32, 13 ("It was after Georgia Stewart filed her initial discrimination complaint in 2013 that OHR terminated her."). As such, Plaintiff failed to oppose summary judgment on her retaliation claim for all acts except for her termination. But, even when a party fails to oppose summary judgment, "[t]he District Court must always determine for itself whether the record and any undisputed material facts justify granting summary judgment." *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir.

2016) (internal quotation marks omitted). Accordingly, the Court will determine whether any acts alleged in Plaintiff's Amended Complaint could state a claim for retaliation under Title VII.

Considering all discriminatory actions alleged in Plaintiff's Amended Complaint, the Court concludes all acts except Plaintiff's termination fail to constitute a materially adverse action for purposes of Plaintiff's retaliation claim. Unlike for discrimination claims, for retaliation claims, the adverse action "need not be employment-related or even occur in the workplace." *Nurriddin v. Bolden*, 40 F. Supp. 3d 104, 116 (D.D.C. 2014). While the adverse action need not result in the change of the plaintiff's employment conditions, the action must still produce an "injury or harm." *See Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). The injury or harm must be "material" "which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal quotation marks omitted).

The only act alleged by Plaintiff which meets the materiality standard is her termination. No other actions alleged by Plaintiff constitute an injury or harm which would dissuade a reasonable employee from making a charge of discrimination. Instead, these alleged actions represent the regular trials and tribulations of the workplace in which employers often make unpopular staffing, management, and resource decisions. *See, e.g., Baloch v. Kempthorne*, 550 F.3d 1191, 1198-99 (D.C. Cir. 2008) (finding that the plaintiff's allegations that his employer imposed sick leave restrictions, proposed two thirty-day suspensions, issued a letter of counseling and reprimand, and yelled at him were not materially adverse); *Brokenborough v. D.C.*, 236 F. Supp. 3d 41, 59 (D.D.C. 2017) (explaining that "single incidents of verbal taunts and mocking, eye-rolling and cursing, a forged leave request slip, and an incident in which someone pretending to be [the plaintiff] called in sick" were not materially adverse); *Buie v.*

*Berrien*, 85 F. Supp. 3d 161, 178 (D.D.C. 2015) (finding that the plaintiff's allegations that she was excluded from assignments, that her supervisor slammed a door in her face, that her supervisor told other employees that she did not want to supervise plaintiff, that she was told a fifth grader could do her job, and that she was ignored and yelled at were not materially adverse).

But, even if all of the acts alleged by Plaintiff constituted materially adverse actions, Defendant would still be entitled to summary judgment on Plaintiff's retaliation claim. Defendant has introduced evidence that staffing, management, and resource decisions pertaining to the Mediation Unit were made based on legitimate business reasons, such as budgeting. Dec. of Monica Palacio, ECF No. 25-1, ¶ 14 (explaining that Plaintiff was denied a second administrative assistant due to "funds in the budget"); ¶ 16 (stating that staffing decisions were "based on the workload" of different units); ¶ 18 (explaining that certain Mediation Unit employees were "separated for legitimate business reasons"). Plaintiff makes no attempt to counter Defendant's legitimate business reasons for staffing, management, and resource decisions pertaining to the Mediation Unit. And, on its own review, the Court finds no material dispute as to Defendant's proffered reasons.

Similarly, Defendant has offered a legitimate business reason for Plaintiff's termination. Defendant has produced evidence that Plaintiff was terminated due to her (1) failure to follow case processing guidelines; (2) failure to attend staff and management meetings or collaborate with other managers; and (3) poor professional judgment and management decision-making. Ex. 9, ECF No. 25-2, 142-43 (Sept. 20, 2016 memorandum concerning termination of Plaintiff). Unlike for her other alleged retaliatory actions, Plaintiff does attempt to offer some evidence that Defendant's proffered reason was not the true reason for her termination. *See* Ex. B, ECF No. 32-1, 17-22 (Ms. Palacio's excellent performance appraisal of Ms. Stewart's performance from

October 1, 2014 to September 30, 2015) [2]; Ex. C, ECF No. 32-1, 24-25 (Ms. Palacio's request for a raise on behalf of Plaintiff based on Plaintiff's "performance"); Ex. I, ECF No. 32-1, 69-102 (Woodard Report showing that nearly half of cases closed by the OHR in 2015 were closed by mediation) [3]. However, even considering Plaintiff's attempts to establish Defendant's proffered reason for her termination as pretextual, the Court concludes that summary judgment on Plaintiff's retaliation claim is appropriate.

Plaintiff's evidence fails to establish a material dispute of fact as to Defendant's proffered reasons for Plaintiff's termination. First, as to Plaintiff's positive performance report, that report documents Plaintiff's behavior only through September 30, 2015. Ex. B, ECF No. 32-1, 17-22. Plaintiff was terminated on September 30, 2016, more than a year later. Plaintiff fails to produce any evidence that Ms. Palacio still considered Plaintiff to be a good worker in the year leading up to her termination. As such, Plaintiff's 2014-2015 positive performance review, given a year before her termination, is not probative of the reasons for Plaintiff's termination. Plaintiff's evidence that Ms. Palacio requested a raise on her behalf suffers from the same shortcoming. Ms. Palacio made the request for a raise on behalf of Plaintiff on August 3, 2015, over a year before Plaintiff was terminated. Ex. C, ECF No. 32-1, 24-25. Plaintiff provides no evidence that the positive comments Ms. Palacio made about Plaintiff in the request for a raise remained true in the year leading up to her termination. Finally, Plaintiff's reliance on the Woodard Report, a

---

[2] The Court notes that it previously decided that Exhibit B should be excluded as Plaintiff failed to produce it during discovery. *See Supra* Sec. III.A. However, even if the Court considers this document, Plaintiff has failed to produce evidence sufficient to create a material dispute that the reasons for her termination were pretextual.

[3] The Court notes that it previously decided that Exhibit I should be excluded as Plaintiff failed to produce it during discovery. *See Supra* Sec. III.A. Additionally, Defendant contends that this exhibit should be disregarded as inadmissible hearsay. However, even if the Court considers this document, Plaintiff has failed to produce evidence sufficient to create a material dispute that the reasons for her termination were pretextual.

study commissioned by Ms. Palacio to review the OHR's case management process, is similarly unavailing. While the report did show that the Mediation Unit was responsible for nearly half of all closed cases, the Report did not contain any findings about Ms. Stewart's personal efficacy as a manager or as an employee. Ex. I, ECF No. 32-1, 81. The fact that the Mediation Unit closed cases does not establish that Plaintiff followed case processing guidelines, attended staff meetings, or exercised professional judgment. As such, none of the evidence presented by Plaintiff provides any indication that in the year leading up to her termination Plaintiff was considered a good employee by Defendant.

Moreover, Defendant has produced evidence that Plaintiff either admitted or failed to contest Defendant's three asserted reasons for termination. First, in the memorandum recommending Plaintiff's termination, Ms. Palacio cited Plaintiff's failure to follow OHR's processing guidelines. Ex. 9, ECF No. 25-2, 142. In her deposition, Plaintiff admitted that she did not always update MATS within 24 to 48 hours as requested by Ms. Palacio. Ex. 1, ECF No. 25-2, 51: 2-15 ("if I didn't have the appropriate staff, it would probably be impossible"); *see also* Ex. A, ECF No. 32-1, ¶ 55 (statement in Plaintiff's declaration that she had "established a weekly procedure [for documenting cases], while Ms. Palacio was insisting on a daily report"). While Plaintiff blames a high workload and understaffing for her failure to document cases as instructed by Ms. Palacio, Plaintiff does not deny her failure to timely document cases in MATS.

Second, Ms. Palacio cited Plaintiff's failure to attend regularly scheduled management meetings as grounds for her termination. Ex. 9, ECF No. 25-2, 142. Plaintiff admits that she was regularly absent from meetings but states that her absences "were due to [her] overseeing mediations and/or conciliations." Ex. A, ECF No. 32-1, ¶ 28. The fact that Plaintiff considered her absences to be justified is irrelevant. What matters is that, as the meetings were regularly

scheduled for the same day and time, Ms. Palacio considered Plaintiff's failure to attend

meetings to be unjustified. Dec. of Monica Palacio, ECF No. 25-1, ¶ 11.

Finally, Ms. Palacio determined that Plaintiff should be terminated, in part, due to poor

professional judgment and wasteful management decisions. Ex. 9, ECF No. 25-2, 142-43. As one

example of Plaintiff's poor professional judgment, Ms. Palacio cites a former employee's

statement that Plaintiff failed to give her enough work. Ex. 4, ECF No. 25-2, 47: 3-48: 6.

Plaintiff attempts to rebut this allegation by pointing out that the employee resigned because of

family duties, not lack of work, and "[e]veryone who ever worked in the Mediation Unit always

had too much work to do." Ex. A, ECF No. 32-1, ¶¶ 33-54, 41. But, neither of these facts is

evidence that the employee did not tell Ms. Palacio that she was assigned an insufficient amount

of work.

Another example of Plaintiff's poor professional judgment cited by Ms. Palacio involves

an individual who Plaintiff strongly recommended should be hired for a staff mediator position.

Plaintiff does not dispute that she encouraged that this individual should be hired. Pl.'s Res.,

ECF No. 32, ¶ 30. Following the hiring of this individual, he began sleeping in his office, was

disrespectful to Plaintiff, and was unable to effectively use his computer. Ultimately, on Ms.

Palacio's instruction, Plaintiff prepared a memorandum concerning this individual, and the

individual was terminated based on the information in the memorandum. Dec. of Monica

Palacio, ECF No. 25-1, ¶ 10. Plaintiff cites no evidence contradicting this sequence of events and

instead simply states that "[o]ther than Ms. Palacio's self-serving Declaration, Defendants

proffer no objective evidence in support of this assertion." Pl.'s Res., ECF No. 32, ¶¶ 31, 33.

But, under Federal Rule of Civil Procedure 56, a moving party can support its factual assertions

with a declaration. Fed. R. Civ. P. 56(c)(1)(A). Such a declaration can be used as support as long

as it is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the … declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Plaintiff provides no such grounds to challenge Defendant's reliance on Ms. Palacio's Declaration.

Accordingly, the Court concludes that Plaintiff has failed to produce evidence showing that Defendant's stated reasons for Plaintiff's termination were pretext for retaliation. The evidence introduced by Plaintiff attempting to show that she was a "good performer" is not probative of her performance in the year leading up to her termination. Additionally, Plaintiff has either conceded or failed to contest the reasons Ms. Palacio gave for her termination. In analyzing this evidence, the Court makes no judgment as to whether or not Plaintiff was actually a "poor performer" because that is not the relevant question. "Ultimately, the question before the Court is not whether the negative [action] was justified or fair, but whether the employer honestly believed" its proffered reasons for taking the action. *Mentzer v. Lanier*, 677 F. Supp. 2d 242, 258 (D.D.C. 2010), *aff'd*, 408 F. App'x 379 (D.C. Cir. 2010). And Plaintiff has presented no evidence supporting an inference that Defendant did not consider its given reasons to be accurate.

The Court further finds that, in addition to presenting no evidence that Defendant's proffered reasons for its actions were pretextual, Plaintiff has introduced no evidence that her 2016 termination is in any way related to her 2013 charge of discrimination. The parties dispute whether or not Ms. Palacio was aware of Plaintiff's 2013 charge of discrimination. But, even if the Court were to credit Plaintiff's claim that Ms. Palacio was aware of Plaintiff's 2013 charge of discrimination, Plaintiff has provided no evidence that such knowledge in any way influenced Ms. Palacio's treatment of Plaintiff or her decision to terminate Plaintiff. Plaintiff does not allege

that Ms. Palacio, or anyone at the OHR, referenced or made comments about Plaintiff's past charge of discrimination against Mr. Valesquez. Additionally, Plaintiff's charge of discrimination was not made against Ms. Palacio and did not involve Ms. Palacio, who became Plaintiff's supervisor only after the charge of discrimination was made.

The single connection that Plaintiff draws between her 2013 charge of discrimination and her 2016 termination is that "[i]t was after Georgia Stewart filed her initial discrimination complaint in 2013 that OHR terminated her." Pl.'s Opp'n, ECF No. 32, 13. "A plaintiff may demonstrate causation through … the temporal proximity between the employer's knowledge of a protected activity and the adverse employment action." *Lee v. Mabus*, 955 F. Supp. 2d 33, 49 (D.D.C. 2013) (internal quotation marks omitted). However, temporal proximity can support an inference of causation "only where the two events are very close in time." *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (internal quotation marks omitted). While there is no bright-line rule for how close in time two events must be to support an inference of causation, "three months is perceived as approaching the outer limit." *McNair v. D.C.*, 213 F. Supp. 3d 81, 89 (D.D.C. 2016) (internal quotation marks omitted); *see also Taylor v. Solis*, 571 F.3d 1313, 1322 (D.C. Cir. 2009) (finding that a two-and-a-half month period between the protected activity and the adverse action could not support an inference of causation). Even if the Court were to consider the date that Plaintiff settled her discrimination claim in 2014 as the relevant date, Plaintiff's protected activity and her termination in 2016 are still separated by approximately two years. Without more, the Court concludes that an approximate two-year gap between Plaintiff's protected activity and Plaintiff's termination cannot support an inference of causation. *See Iyoha v. Architect of the Capitol*, 927 F.3d 561, 574 (D.C. Cir. 2019) (finding that weak evidence of

temporal proximity, without more, is insufficient to defeat summary judgment where the defendant has offered a non-discriminatory reason for the employment action).

Considering the parties' arguments as well as the record before the Court, the Court concludes that summary judgment is appropriate. Plaintiff has failed to "'produce[] sufficient evidence for a reasonable jury to find that [Defendant's] asserted non-discriminatory reason was not the actual reason and that [Defendant] intentionally discriminated against [Plaintiff]' on the basis of" her 2013 charge of discrimination. *Davis*, 26 F. Supp. 3d at 118-19 (D.D.C. 2014) (quoting *Brady*, 520 F.3d at 494). Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's Title VII retaliation claim.

### C. Age Discrimination Claims

In addition to her retaliation claim, Plaintiff also brings a claim for age discrimination under the ADEA. Plaintiff brings a general age discrimination claim focused on her termination in addition to a hostile work environment age discrimination claim. Defendant moves for summary judgment on both claims, and the Court will address each claim in turn.

#### 1. General Age Discrimination Claim

The standard for summary judgment on an age discrimination claim under the ADEA is very similar to that for a retaliation claim under Title VII. *Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013) ("We consider [plaintiff's] age ... discrimination claim[ ] in the same way we analyze Title VII claims."). Under the ADEA, it is "unlawful for an employer … to fail or refuse to hire or to discharge an individual or otherwise discriminate against any individual … because of such individual's age." 29 U.S.C. § 623(a)(1). Because Plaintiff submits no direct evidence of age discrimination, as with her retaliation claim, Plaintiff's discrimination claim is controlled by the *McDonnell Douglas* burden-shifting framework. Where, as here, the

defendant has proffered a legitimate, non-discriminatory explanation for the challenged adverse decision, "the *McDonnell Douglas* inquiry distills to one question: 'Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of [age] ...?" *Evans v. Sebelius*, 716 F.3d 617, 620 (D.C. Cir. 2013) (quoting *Brady*, 520 F.3d at 494). As part of this inquiry, the Court examines whether "there is evidence from which a reasonable jury could find that the employer's stated reason for the [decision] is pretext and any other evidence that unlawful discrimination was at work." *Barnett*, 715 F.3d at 358. However, the Court is concerned only with whether or not the action was discriminatory, and it cannot "act as a super-personnel department that reexamines an entity's business decisions" absent discriminatory motive. *Id.* at 359 (internal quotation marks omitted).

Again, in her Amended Complaint, Plaintiff alleges multiple adverse actions that Defendant took on account of her age. In her Amended Complaint, Plaintiff states that Defendant discriminated against her by hiring employees without Plaintiff's input, terminating employees without Plaintiff's input, failing to fully staff the OHR Mediation Unit, failing to provide the OHR Mediation Unit with necessary tools and equipment, assigning work to the Mediation Unit staff without Plaintiff's input, giving preferential treatment to younger supervisors, and terminating Plaintiff. Compl., ECF No. 11, ¶ 20. But, in her Opposition to Defendant's Motion for Summary Judgment, Plaintiff defends her discrimination claim only as it relates to her termination. Pl.'s Opp'n, ECF No. 32, 13 ("She is a Black woman, almost 70 years old, and she was terminated under circumstances which infer discrimination."). As such, Plaintiff fails to rebut arguments for summary judgment on her age discrimination claim as it relates to any alleged adverse actions other than her termination.

Despite Plaintiff's failure to provide support for her alleged adverse actions other than termination, the Court will still conduct its own examination to determine whether or not Defendant is entitled to judgment as a matter of law on these claims. Conducting its own examination, the Court concludes that only Plaintiff's termination rises to the level of an actionable adverse employment action. An adverse action is "'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). An employee must "experience[ ] materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002); *see also Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006) (distinguishing between "purely subjective injuries" which are not actionable, and "objectively tangible harm," which is actionable). Further, "[a] tangible employment action in most cases inflicts direct economic harm." *Burlington Indus.,* 524 U.S. at 762. Therefore, "not everything that makes an employee unhappy is an actionable adverse action." *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001). The Court concludes that none of the actions alleged by Plaintiff, excluding her termination, rise to the level of an actionable adverse employment action as they did not constitute a significant change in employment status, professional responsibilities, or benefits and Plaintiff does not claim that they did so.

But, even if these other alleged actions were found to be adverse employment actions, the Court would still grant Defendant summary judgment on Plaintiff's age discrimination claim as Plaintiff has failed to connect any of Defendant's actions, including her termination, to

discrimination based on Plaintiff's age. Plaintiff introduces only two pieces of evidence even remotely connected to her claim of age discrimination.

First, in its Statement of Undisputed Facts, Defendant mentions a May 2016 meeting between Ms. Palacio, Plaintiff, and Rahsaan Coefield, OHR's former Director of Investigations who also acted as the Deputy Director. Def.'s Stmt., ECF No. 25, ¶¶ 51-53. In her deposition, Plaintiff alleged that Mr. Coefield said to Plaintiff, "[y]ou annoy me and your unit's dysfunctional." Ex. 1, ECF No. 25-2, 53: 1-14. Following the meeting, Plaintiff sent an email to Ms. Palacio complaining of Mr. Coefield's comments and stating that "I do not know if it is because I am a woman, elderly, or that he simply doesn't like the way I look." Ex. 8, ECF No. 25-2.

Plaintiff does not appear to rely on her interaction with Mr. Coefield as evidence of age discrimination; however, for the sake of completeness, the Court will address the interaction. First, the Court finds that Mr. Coefield's comment in the meeting is not evidence of age discrimination. Mr. Coefield did not mention or implicitly refer to Plaintiff's age. In fact, it appears that even Plaintiff did not consider Mr. Coefield's comment to be evidence of age discrimination as she explained to Ms. Palacio that she did not know if Mr. Coefield made the comment because of her sex, age, or because "he simply doesn't like the way [she] look[s]." *Id.* Second, even if Mr. Coefield had made a comment about Plaintiff's age, this isolated comment would not be sufficient to tie Defendant's adverse employment actions to age discrimination. This comment was isolated, and Plaintiff provides no evidence that Mr. Coefield had any authority to make decisions that impacted Plaintiff. *See Hampton v. Vilsack*, 685 F.3d 1096, 1101 (D.C. Cir. 2012) (finding that a single statement of racial animus made by an individual not involved in the challenged decision was not sufficient to create an inference of discrimination).

Plaintiff's only other piece of evidence allegedly connecting Defendant's adverse employment actions to age discrimination involves Defendant's treatment of Mr. Coefield. Plaintiff contends that she "was terminated for being a 'poor performer' even though Rahsaan Coefield, who supervised the OHR Investigation Unit, was the true poor performer, according to the Woodard Report. Rahsaan Coefield is in his thirties." Pl.'s Opp'n, ECF No. 32, 13. The Court concludes that Defendant's treatment of Mr. Coefield does not support an inference of discrimination.

In arguing that Plaintiff was treated differently than Mr. Coefield due to her age, Plaintiff is attempting to use Mr. Coefield as a comparator. In order to create an inference of discrimination through the use of a comparator, a plaintiff needs to present evidence that the employer treated similarly situated "employees of a different [age] more favorably in the same factual circumstances." *Brady*, 520 F.3d at 495. In order to show that an employee is similarly situated, a plaintiff must "demonstrate that all of the relevant aspects of her employment situation were 'nearly identical' to that of" the comparator-employee. *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995). "[T]he co-workers must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Childs-Pierce v. Util. Workers Union of Am.*, 383 F. Supp. 2d 60, 70 (D.D.C. 2005) (quotation marks and citation omitted), *aff'd*, 187 F. App'x. 1 (D.C. Cir. 2006). While there is no dispute that Mr. Coefield is not a member of Plaintiff's protected age class, Plaintiff has not presented evidence that she and Mr. Coefield were similarly situated or that they were treated differently in the same factual circumstances.

First, Plaintiff has presented no evidence that she and Mr. Coefield were similarly situated. While Plaintiff and Mr. Coefield were supervised by the same individual, Ms. Palacio, Plaintiff offers no evidence that they had the same or similar duties. Plaintiff and Mr. Coefield managed different units within the OHR, and Mr. Coefield also acted as the Deputy Director. Def.'s Stmt., ECF No. 25, ¶ 47. Plaintiff provides no evidence that her duties as Manager of the Mediation Unit were comparable to Mr. Coefield's duties as the Manager of the Investigations Unit. In her deposition, Plaintiff stated that she did not "know what [Mr. Coefield's] duties and responsibilities were generally." Ex. 1, ECF No. 25-2, 56: 20-22. Because Plaintiff failed to produce evidence that she and Mr. Coefield had similar duties and responsibilities, Plaintiff cannot use Mr. Coefield as a comparator to establish an inference of discrimination.

Moreover, Plaintiff produces no evidence that she and Mr. Coefield "engaged in the same conduct" and were treated differently. *Childs-Pierce*, 383 F. Supp. 2d at 70. Again, Ms. Palacio ultimately terminated Plaintiff on the grounds that she (1) failed to follow case processing guidelines; (2) failed to attend staff and management meetings; and (3) exercised poor professional judgment and management decision-making. Ex. 9, ECF No. 25-2, 142-43. Nowhere does Plaintiff allege that Mr. Coefield had, or was perceived to have, these same professional short-comings.

In her Declaration, Plaintiff makes the unsupported allegation that Mr. Coefield "consistently underperformed but was not penalized." Ex. A, ECF No. 32-1, ¶ 5. But, this broad and conclusory allegation is not sufficient on a motion for summary judgment. *See Johnson v. Wash. Metro. Area Transit Auth.*, 314 F. Supp. 3d 215, 222 (D.D.C. 2018) (explaining that vague and conclusory statements cannot defeat a motion for summary judgment). Plaintiff also states that "[a]t one time the Intake Unit was backlogged for three or four months, and Mr. Coefield's

Investigation Unit was even further behind." Plaintiff alleges that Mr. Coefield was not

disciplined for this backlog. Ex. A, ECF No. 32-1, ¶ 8. As evidence of this backlog, Plaintiff

cites to a 2014 memorandum from Mr. Coefield containing a plan to reduce the three-month

backlog of intake reviews. Ex. N, ECF No. 32-1, 159-62.[4] But, it is not evident from Plaintiff's

statement or from the memorandum that Mr. Coefield was responsible for this backlog or that his

failure to follow case processing guidelines contributed to the backlog. Moreover, it appears that

Mr. Coefield developed a plan to comply with case processing requirements, whereas Plaintiff

provides no evidence that she also developed such a plan. *Id.*

Finally, Plaintiff argues that the Woodard Report is evidence that Mr. Coefield was a

poor performer. Ex. I, ECF No. 32-1, 69-102.[5] But, once again, the Woodard Report was a study

commissioned by Ms. Palacio to review the OHR's case management process, and it did not

specifically review or make assessments on any individual OHR staff members. And, even if

issues in the Investigative Unit were directly attributable to Mr. Coefield, the Woodard Report

did not find that Mr. Coefield (1) failed to follow case processing guidelines, (2) failed to attend

staff and management meetings, or (3) exercised poor professional judgment and management

decision-making. As such, Plaintiff has presented no evidence that she and Mr. Coefield engaged

in similar conduct and were treated differently.

---

[4] The Court notes that it previously decided that Exhibit N should be excluded as Plaintiff failed to produce it during discovery. *See Supra* Sec. III.A. However, even if the Court considers this document, Plaintiff has failed to produce evidence sufficient to create a material dispute that she was treated differently than Mr. Coefield on the basis of age.

[5] The Court notes that it previously decided that Exhibit I should be excluded as Plaintiff failed to produce it during discovery. *See Supra* Sec. III.A. Additionally, Defendant contends that this exhibit should be disregarded as inadmissible hearsay. However, even if the Court considers this document, Plaintiff has failed to produce evidence sufficient to create a material dispute that she was treated differently than Mr. Coefield on the basis of age.

In addition to failing to produce any evidence which creates an inference of discrimination, Plaintiff also fails to introduce any evidence showing that Defendant's proffered reasons for its actions are pretextual. Defendant's proffered reasons for its actions, and Plaintiff's attempt to show those reasons to be pretextual, are the same for Plaintiff's age discrimination claim as for her retaliation claim. As the Court has already engaged in a full discussion of the issues, a repetition of that discussion is not necessary here. *See Supra* Sec. III.B.

Briefly, Defendant contends that its decisions relating to the staffing, structure, and resources of the Mediation Unit were made for legitimate business reasons, such as budget. Dec. of Monica Palacio, ECF No. 25-1, ¶ 14 (explaining that Plaintiff was denied a second administrative assistant due to "funds in the budget"); ¶ 16 (stating that staffing decisions were "based on the workload" of different units); ¶ 18 (explaining that certain Mediation Unit employees were "separated for legitimate business reasons"). Plaintiff introduces no evidence questioning Defendant's legitimate business reasons for these decisions. As to Plaintiff's termination, Defendant has produced evidence that Plaintiff was terminated due to Plaintiff's (1) failure to follow case processing guidelines; (2) failure to attend staff and management meetings; and (3) poor professional judgment and management decision-making. Ex. 9, ECF No. 25-2, 142-43 (Sept. 20, 2016 memorandum concerning termination of Plaintiff). Plaintiff either admitted to or failed to contest Defendant's reasons. And, Plaintiff produced no evidence showing that she was considered to be a "good performer" during the relevant time period.

Considering the parties' arguments as well as the record before the Court, the Court concludes that summary judgment is appropriate. Plaintiff has failed to "'produce[] sufficient evidence for a reasonable jury to find that [Defendant's] asserted non-discriminatory reason was not the actual reason and that [Defendant] intentionally discriminated against [Plaintiff]' on the

basis of" her age. *Davis*, 26 F. Supp. 3d at 118-19 (D.D.C. 2014) (quoting *Brady*, 520 F.3d at 494). Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's general age discrimination claim under the ADEA.

### 2. Hostile Work Environment

In addition to her general age discrimination claim, in her Amended Complaint, Plaintiff also asserts a claim under the ADEA for hostile work environment. Compl., ECF No. 11, ¶ 40. In its Motion, Defendant moves for summary judgment on Plaintiff's hostile work environment claim. Def.'s Mot., ECF No. 25, 16. In her Opposition, Plaintiff makes no mention of her hostile work environment claim. Despite Plaintiff's failure to oppose summary judgment on her hostile work environment claim, the Court must still determine for itself whether or not summary judgment is warranted. *Winston & Strawn*, 843 F.3d at 505 (explaining that a court must consider for itself whether summary judgment is appropriate). The Court finds that summary judgment is warranted on the record before the Court.

To prevail on a hostile work environment claim, Plaintiff must show that she "was subjected to discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Brooks v. Grundmann*, 748 F.3d 1273, 1276 (D.C. Cir. 2014) (internal quotation marks omitted). In her Amended Complaint, Plaintiff states that Defendant discriminated against her by hiring employees without Plaintiff's input, terminating employees without Plaintiff's input, failing to fully staff the OHR Mediation Unit, failing to provide the OHR Mediation Unit with necessary tools and equipment, assigning work to the Mediation Unit staff without Plaintiff's input, giving preferential treatment to younger supervisors, and terminating Plaintiff. Compl., ECF No. 11, ¶ 20. Plaintiff's allegations are not sufficiently severe or pervasive to

constitute a hostile work environment. *See, e.g., Singh v. U.S. House of Representatives*, 300 F. Supp. 2d 48, 56 (D.D.C. 2004) ("Criticisms of a subordinate's work and expressions of disapproval (even loud expressions of disapproval) are the kinds of normal strains that can occur in any office setting."); *Richard v. Bell Atlantic Corp.*, 209 F. Supp. 2d 23, 35 (D.D.C. 2002) ("[T]he type of conduct that [the plaintiff] complains of, i.e., rude comments, unjust criticism, and stressful working conditions, amount to ordinary tribulations of the workplace that [are] insufficient as a matter of law for a hostile environment case." (internal quotation marks omitted)). Additionally, for the reasons that have been explained above, the Court finds that Plaintiff has failed to connect Defendant's actions allegedly giving rise to a hostile work environment to age discrimination. *See Supra* Sec. III.C.1.

Lacking any argument from Plaintiff, the Court concludes that, as a matter of law, Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim under the ADEA. The actions alleged by Plaintiff do not rise to the necessary standard of severity and pervasiveness. Additionally, Plaintiff has failed to produce any evidence creating the inference that she was subject to a hostile work environment on account of her age. As such, the Court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's hostile work environment claim under the ADEA.

## IV. CONCLUSION

In sum, the Court GRANTS Defendant's motion for summary judgment on all of Plaintiff's claims. As to Plaintiff's retaliation claim, no reasonable jury could find that Defendant's asserted non-retaliatory reasons for its actions were pretextual and that Defendant intentionally retaliated against Plaintiff for her 2013 discrimination charge. Similarly, for Plaintiff's general age discrimination claim, no reasonable jury could find that Defendant's

asserted non-discriminatory reasons for its actions were pretextual and that Defendant

intentionally discriminated against Plaintiff based on her age. Finally, Plaintiff has failed to

allege actions of a sufficient severity and pervasiveness to sustain a hostile work environment

claim, and Plaintiff has failed to present any evidence that Defendant's allegedly hostile actions

were committed on account of her age. An appropriate Order accompanies this Memorandum

Opinion.

_____/s/_____

COLLEEN KOLLAR-KOTELLY
United States District Judge